## 260

Earnestine BORROUGH, A Minor, Age 16, Jessie D. Borrough, A Minor, Age 14, and Virgie May Borrough, A Minor, Age 14, by their Father and Next Friend, Jack Borrough, et al., Plaintiffs,

v.

Elmer JENKINS, As Superintendent of the Red Bird Dependent School District No. 35, and the Red Bird Dependent School District No. 35, a corporation, et al., Defendants.

### Civ. A. No. 4006.

United States District Court
E. D. Oklahoma.
Dec. 15, 1955.

Ada Lois Fisher, Oklahoma City, Okl., for plaintiffs.

U. Simpson Tate, Dallas, Tex., Robert L. Carter and Thurgood Marshall, New York City, for defendants.

Before MURRAH, Circuit Judge, and VAUGHT and WALLACE, District Judges.

WALLACE, District Judge.

The plaintiffs, citizens and residents of Wagoner County, Oklahoma, urge, in essence, that because of their race and color they are being denied, by the defendants, the right to freely attend the public school located in their district (the Coweta School) as enjoyed by other children living in the same district.[1] Plaintiffs specifically allege "that they have been, and are now being, denied equal rights under the Constitution and laws of the United States and thus deprived of their civil rights in violation of the Constitution and laws of the United States"; and, that this is "an action for the redress of the deprivation under color of law, of rights, privileges, and immunities secured to them" by the federal constitution.[2] The defendants deny that plaintiffs are in any way being discriminated against because of their race

---

1. Counsel stipulated that plaintiffs are colored children between the ages of 14 and 17 years of age, living either in the Coweta or Porter School Districts.

2. The plaintiffs rely on 28 U.S.C.A. § 1331; 42 U.S.C.A. §§ 1981, 1983, and, 28 U.S.C.A. § 1343(3).

or color, and assert that the grievance advanced by plaintiffs is one involving purely local law over which this court has no jurisdiction.

The essential facts are not in dispute. Prior to Brown v. Board of Education of Topeka,[3] the defendant Red Bird Dependent School District No. 35 (herein referred to as "Red Bird") was operated as a school for colored children; and, the defendant Coweta Independent School District No. 17 (herein referred to as "Coweta") was operated as a school for white children, in conformity with the then existing Oklahoma law providing for "separate but equal" racially segregated educational facilities. Inasmuch as there was no colored school in the Coweta District it was necessary for all Negro children living within the geographic boundaries of such district to attend some out-of-district school; and, the plaintiffs, previous to the present school year, attended Red Bird. Under Oklahoma law, to attend a school located outside the resident district (regardless of the reason for so attending) a formal transfer procedure need be followed, which includes the filing of an application for transfer by the May 15th which immediately precedes the school year for which the transfer is desired and approval by the County Superintendent of Schools, after notice and opportunity for hearing.[4] In the spring of 1955, pursuant to the custom of transferring to an out-of-district colored school, each of the plaintiffs indicated they desired to attend Red Bird during the 1955–1956 term and completed the requisite transfer formalities. Subsequent to such transfers, but prior to the commencement of the fall school term, the final opinion in the Brown case was handed down.[5] As a result of such decision Coweta announced a willingness to accept colored as well as white students. The plaintiffs enrolled in Coweta (the school nearest their homes) and attended classes for several weeks in September. At the close of such time the plaintiffs were notified they could no longer attend Coweta for the 1955–1956 term, without the payment of tuition, inasmuch as they had already been officially transferred to Red Bird for such school term.[6] Inasmuch as specific financial

---

3. Original opinion reported at 1954, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873, and, supplemental opinion reported at 1955, 349 U.S. 294, 75 S.Ct. 753.

4. The applicable statute, 70 Okla.Stat.1951 § 8–2 provides: "In order that any child may be transferred, a written application for such transfer, designating the district to which the transfer is desired, shall be made by either of his parents, or by his guardian, and such application shall be filed with the County Superintendent of Schools not later than May 15th, preceding the school year for which the transfer is desired. The County Superintendent of Schools shall notify, not later than May 25th, the clerk of the board of education of the district from which the transfer is proposed to be made and the clerk of the board of education of the district to which the transfer is proposed to be made. The notices of the application for transfer shall be to the effect that on or before June 5th, the board of education of either district affected by the proposed transfer shall have an opportunity to show cause why the transfer should or should not be granted, if any. The County Superintendent of Schools shall, not later than June 15th, notify, in writing, the clerk of each board of education affected as to whether or not the transfer has been granted. Provided that at any time before June 20th, the board of education of either district or the parent or guardian of the child may appeal, in writing, from the action of the County Superintendent of Schools to the district court of the county in which the child resides, and such appeal shall be heard, and a decision rendered thereon, not later than June 30th, and such decision shall be final * * *"

5. Fn. 3, supra.

6. 70 Okla.Stat.Supp. § 8–3 provides in part: "* * * when the transfer of a child has been finally approved or becomes final under the provisions of this Article, such child shall not be entitled to attend school in the district from which he was transferred, even though he continues to live therein, during the school year for which the transfer was made * * *." Section 1–16 of the same Title states that where unauthor-

commitments were made by the Red Bird school board based upon the anticipated attendance of plaintiffs (and the accompanying financial aid.)[7] Red Bird will not voluntarily permit the revocation or cancellation of plaintiffs' transfers.

In the light of these facts the court is of the opinion the controverted issue is not one which basically involves racial discrimination, and consequently the court is without jurisdiction to grant the requested relief. There is no disposition on the part of Coweta (the former all white school) to not now accept colored children and, the school's present colored enrollment confirms this fact.[8] Coweta's request for tuition from plaintiffs was not due to plaintiffs' race or color, but because plaintiffs, for school purposes, were not official residents of the Coweta District during the 1955-1956 term. Plaintiffs ask this court to exercise federal authority to annul or cancel duly consummated transfers made under state law, which transfer law, of itself, applies equally to all races. Doubtless, it is true that the plaintiffs would not have transferred to Red Bird for this school term had they known that Coweta would be open to them, and there is a certain moral inequity in requiring plaintiffs to pay tuition to attend the school located in their own home district. However, even though plaintiffs' motives for trans-

ferring to Red Bird grew out of a pattern established by unconstitutional segregation, nonetheless, the basic controversy before this court is one between two separate colored factions over local fiscal policies. Simply stated, the question is, "Shall previously entered into transfers be annulled to enable plaintiffs to attend the school nearest their homes where the transferee district has made definite financial commitments based upon the existence of such transfers?" This issue is purely one of local law.

Although not necessary for the disposition of this case, the court feels constrained to observe that even if it had jurisdiction over the contested issue because of its segregation background, the court would not grant the sought-after affirmative relief. All parties before the court have evidenced the highest degree of good faith as touching the problem of racial integration in education, and the circumstances giving rise to this controversy will no longer exist by the close of the present school term. Because of the defendant school districts' good faith strides toward complete integration, this court would have no disposition to use its equitable authority to compel Red Bird to renounce all financial rights flowing from the transfers in question for the present school term, in order to force complete and immediate integration. Under the conditions existing in

---

ized pupils attend any school district they, "may be admitted to the schools of such district on a tuition basis only" and such tuition "shall have been paid in advance yearly or by semester as determined by the local board of education, to such district, before such attendance during any period, a tuition fee equal to the per capita cost of education for a similar period in such district during the preceding year. If the State Board of Education discovers that such attendance has been allowed without prior payment of the tuition fee in advance as herein required, no further payment of any State Aid funds shall be made to the district until such district has shown to the satisfaction of the State Board of Education that all such tuition fees have been paid or that such tuition pupil will no longer

be allowed to attend school until the required tuition fee has been paid."

7. Defendant Elmer Jenkins, Superintendent of Red Bird, testified that a new school bus was purchased, one of the primary purposes being to have transportation for transferred colored pupils residing in the Coweta District; and that one additional teacher was hired for this school year, at a salary of $300.00 per month.

8. There are some 30 colored children now attending Coweta. These include colored children living within the district who had not transferred out, or were able to have such transfers cancelled by the transferee district, together with plaintiffs who have paid tuition.

the defendant districts, such districts are entitled to this added time to complete, in orderly fashion, their desegregation program.[9]

Defendants' motion to dismiss is hereby sustained.

9. As observed by Mr. Chief Justice Warren in the Supplemental Brown opinion, 349 U.S. 294, 299, 300, 75 S.Ct. 753, 756: "Full implementation of these constitutional principles may require solution of varied local school problems. School authorities have the primary responsibility for elucidating, assessing, and solving these problems; courts will have to consider whether the action of school authorities constitutes good faith implementation of the governing constitutional principles. * * * In fashioning and effectuating the decrees, the courts will be guided by equitable principles. Traditionally, equity has been characterized by a practical flexibility in shaping its remedies and by a facility for adjusting and reconciling public and private needs. These cases call for the exercise of these traditional attributes of equity power. * * * "