Van Voorhis, J.
(dissenting). That race was a material factor, indeed the dominant factor and controlling consideration in redrawing the boundary lines of these school zones, is too clear to be denied. The petition so alleges, and the answer admits it. As is stated in the majority opinion in this court, the result was to obtain an enrollment of one-third white children in Junior High School 275 instead of 14% white under the original plan. The avowed purpose and reason for drawing the boundary lines in the manner ultimately approved by the Board of Education was to achieve a larger proportion of white children in comparison with the Negroes and Puerto Ricans.
This, as it seems to me, is the reverse of anti-discrimination. The principle of anti-discrimination is that each person shall be treated without regard to race, religion or national origin. *200 It is discrimination to admit a person because he is a Negro or a Pole, Catholic, Anglo-Saxon, Jew, and so on. If persons can legally be admitted because they belong to any of these groups, then they can be excluded for the same reason. Such a result would be contrary to the equal protection clause of the Federal and State Constitutions (U. S. Const., 14th Arndt. § 1; N. Y. Const., art. I, § 11), as well as sections 313 and 3201 of the New York State Education Law, section 40 of the Civil Bights Law and section 290 of the Executive Law. This signifies more than that school boards cannot be compelled to correct racial imbalance; it means that they are not permitted to do so by law if that involves admitting or excluding groups on account of race, religion or national origin. If school children, employees, tenants or others can be admitted because they are Negroes, they can also be admitted because they are Aryans, and they or other racial groups can be excluded on the same basis. Color is not the only factor in integration. It would be hopeless for any school board or other governing body to try to assemble an ideal amalgam by admitting the right quotas or other proportions of cultural, religious or ethnic groups. The principle is not unlike that enunciated in Hughes v. Superior Ct. (339 U. S. 460, 464) where the Supreme Court said that to prevent a State from banning picketing to hire more Negroes “would mean that there could be no prohibition of the pressure of picketing to secure proportional employment on ancestral grounds of Hungarians in Cleveland, of Poles in Buffalo, of Germans in Milwaukee, of Portuguese in New Bedford, of Mexicans in San Antonio, of the numerous minority groups in New York, and so on through the whole gamut of racial and religious concentrations in various cities.” If Negroes could legally be admitted because they are Negroes, it follows that they could be excluded for the same reason: and similarly with Jews, Catholics, Protestants, Italians, northern Europeans or any other ethnic or religious group.'
So long as these distinctions are obliterated, for the purpose in question, integration and anti-discrimination are served. Just so soon, however, as the tables are turned, and the position taken that any of these multiform groups are to be promoted in competition with other groups, it becomes discrimination *201 not integration. This is recognized by the farsighted members of all of the minority groups in condemning the quota system, which it closely resembles.
On May 4, 1964 the United States Supreme Court denied an application for certiorari to review Bell v. School City of Gary, Indiana (324 F. 2d 209, affg. 213 F. Supp. 819). What was involved in that case explicitly appears from the opinion of the District Judge, whose judgment was affirmed by the Federal Court of Appeals and declined to be reviewed by the Supreme Court. It makes clear that there is no essential difference between whether the result is attained by drawing the boundaries of new districts, altering the boundaries of existing districts, or transferring students from one district to another, if it be done on account of race. The charge in the Bell case was that a new school district was laid out and boundaries changed of existing school districts, and children ‘ ‘ bussed ’ ’ from one school district to another for the purpose of maintaining segregated schools. The major contention of the plaintiffs therein, as stated by the trial court, was “ that the defendant, by the manner in which it has drawn its school district boundaries, has purposely and intentionally maintained a segregated school system thereby depriving a majority of the Negro students in Gary from attending schools with white students. The Board, on the other hand, specifically denies that there has been any intentional segregation of the races in the Gary school system. As a matter of fact, the School Board and its staff insist that they are color blind, so far as the races are concerned, in the administration of the Gary school system. They maintain no records on the basis of race, or color ”. Transfers of students were permitted on request of the student or parent, “ the reason for the transfer request is considered and is allowed or denied depending upon the apparent reasonableness and desirability of-the transfer and no racial factors are considered in allowing or disallowing a transfer.”
The neighborhood school was described as being a long and well-established. institution in American public school education, “ almost universally used, particularly in the larger school systems ” and, in the Bell case, the court said further: “ With the use of the neighborhood school districts in any school *202 system with a large and expanding percentage of Negro population, it is almost inevitable that a racial imbalance will result in certain schools.”
Although the holdings of the trial court and Federal Court of Appeals in the Bell case were that the educational authorities were not required to redistrict or change their student transfer arrangements, this was for the reason that they had not taken race into account in laying the boundaries or providing for student transfers between school districts. That is exactly what the Board of Education of the City of New York did do in the present instance. It makes no difference in legal effect that Negroes considered themselves aggrieved in the Gary, Indiana, case and that the objectors here are whites. The Constitution and statutes forbid racial discrimination, which applies equally to white or nonwhite. The principle of the G-ary school decision applies to this situation. There the acts of the educational authorities were upheld for the reason that the distributions made were not actuated by race as a factor. The same principle, as it seems to me, requires that the school zoning by the board in this case should be annulled because it acted on the basis of racial distinction.
In Brown v. Board of Educ. (347 U. S. 483, 349 U. S. 294) it was held that segregation of white and negro children in the public schools of a State denied the equal protection of the laws if it was done on the basis of race. This was, as stated in the opinion, for the reason that Negroes “ had been denied admission to schools attended by white children under laws requiring or permitting segregation according to race.” Under the reasoning of that decision, it likewise denies the equal protection of the laws to make the admission or exclusion of children depend upon their color regardless of whether their color be white or black.
Both Special Term and the Appellate Division assumed jurisdiction, treating this as a justiciable question, and both held that race was a material factor in the shaping of these school districts in Brooklyn in the manner done by the board. In view of the decisions that the courts have jurisdiction of districting where violation of the equal protection clause of the Fourteenth Amendment is involved (Baker v. Carr, 369 U. S. 186; 7. M. C. A. v. Simon, 370 U. S. 190), it seems to me that *203 we are confronted with the responsibility of making a judicial determination concerning whether race, religion, national origin or other similar considerations can operate as decisive factors in the creation or alteration of school zones or districts and in other aspects of the administration of the educational system of the State.
I concur in the memorandum opinion by-Baker, J., at Special Term, except that I base my conclusions also upon the State and Federal Constitutions and upon the other New York State statutes above mentioned.
The order appealed from should be reversed and the judgment of Special Term reinstated.
Judges Dye, Fuld, Burke, Scileppi and Bergan concur with Chief Judge Desmond; Judge Van Voorhis dissents in a separate opinion.
Order affirmed.