Charles Margett, J.
 

 This is a proceeding brought under the provisions of article 78 of the CPLR to review and thereupon to annul the determination of the respondents, constituting the Board of Education of the City of New York, hereinafter called the “board”, Calvin E. Gross and Bernard E. Donovan, respectively, the Superintendent of Schools and the Executive Deputy Superintendent of Schools of the City of New York, by which adjoining Public Schools 149 and 92, Queens, have been paired under a community attendance zone so that (a) kindergarten children will attend both schools based upon their former
 
 *622
 
 respective attendance area zones and (b) all grades 1-2 children in the new common zone will attend Public School 92 and all grade 3-6 children in the new common zone will attend Public School 149.
 

 When this proceeding, initiated by an order to show cause dated February 25, 1964, was first commenced by the service of that order and the petition and exhibits thereto annexed on February 27, 1964, the determination now under review was still in the proposal stage. Consequently, in their answer served on March 25, 1964, the respondents urged the dismissal of the proceeding as premature asserting, however, a defense on the merits to the effect that if and when the proposal challenged or some similar plan of reorganization of the two schools is adopted such action would constitute a proper and reasonable exercise of power and discretion vested in the board, which action would be neither arbitrary nor capricious. On June 8, 1964 the petitioners served their reply to the affimative matter set forth in the foregoing answer and, by way of supplemental petition, alleged in substance that the board, subsequent to the service of the original petition, made the determination under review by the adoption of a plan, dated May 28, 1964, thereto annexed and referred to as Exhibit VII. On June 12, 1964 the respondents served their answer to the supplemental petition in which they admitted that at a regular meeting of the board on June 3, 1964 a resolution was passed adopting the plan, of which Exhibit VII annexed to the supplemental petition was a true copy. Upon the oral argument the respondents’ counsel withdrew from consideration the original defense of prematurity and urged the disposition of the proceeding on its merits.
 

 The petitioners, 11 in number,
 
 *
 
 are the parents of as many students who attended kindergarten and grades 1 and 2 in Public School 149, located on 34th Avenue between 93rd and 94th Streets, Jackson Heights, Queens County, New York. The school with which it has been paired, Public School 92, is located six blocks or .2 miles away, at 99-01 34th Avenue, Corona, Queens County, New York. By the adopted plan here challenged, the former separate zones served by these two elementary schools were combined into a single zone, eliminating, however, from the easterly and westerly sides of such combined zone certain portions which formerly were part of the separate zones.
 

 
 *623
 
 Students from Public School 92 have been selected to attend grades 3-6 in Public School 149 and students from the latter school have been selected to attend grades 1-2 in Public School 92. None of the petitioners’ children will be bused. The farthest distance a pupil in the combined zone may have to travel to either school is .92 miles, which would afford him the right to be bused under the policy of the board which permits busing where the distance from the home to the school is one-half mile or over as compared with the two-mile distance said to be prevalent outside the City of New York. There was no busing of children in the original zones notwithstanding that a certain number had the right to that service because the distance of the school from their homes exceeded half a mile.
 

 Petitioners urge that the children in grades 1 and 2 in Public School 149 were selected to attend Public School 92 solely because they are white-skinned and that students of Public School 92, grades 3, 4, 5 and 6, were selected to attend Public School 149 solely because they are Negro. In other words, urge the'petitioners, the community zoning plan by which the two schools were paired was motivated solely by the board’s desire to reduce existing racial imbalance in the schools — a criterion, they contend, that standing alone violates their children’s constitutional and statutory rights. They conceded on oral argument, however, the board’s “ right to administratively change zoning lines, provided * * * it is not based solely upon racial integration in the schools of the City of New York, because
 
 *
 
 ■* * racial integration is only one of the criteria which the Board of Education itself states it may follow.”
 

 In commenting on the two
 
 Brown
 
 crises decided by the Supreme Court of the United States
 
 (Brown
 
 v.
 
 Board of Educ.,
 
 347 U. S. 483, 349 U. S. 294), the Appellate Division of the Second Department
 
 (Matter of Balaban
 
 v.
 
 Rubin,
 
 20 A D 2d 438, 445-447) stated that the Supreme Court:
 

 “
 
 did not decide that the States
 
 must
 
 mix persons of different races in the schools. What it decided was that a State by affirmative action may not deny to any person on account of race the right to attend any school which the State maintains; it prohibited affirmative discrimination; and it proscribed the use of all governmental power to enforce segregation. In other words, the Constitution does not require integration. It merely forbids discrimination. * * *
 

 “
 
 However, the fact that integration is not compelled by the Federal Constitution or by the
 
 Brown
 
 cases does not mean that integration is prohibited or not permitted. * * *
 

 
 *624
 
 “In onr opinion, in the second
 
 Brown
 
 case (349 U. S. 294, 300-301) when the Supreme Court stated that ‘ the courts may consider problems related to * * *
 
 revision of school districts
 
 and attendance areas into compact units to achieve a system of determining admission to the public schools
 
 on a nonracial basis
 
 ’, it meant that one of the ways in which desegregation should be carried out was within the framework of ‘ school districts and attendance areas ’ and that this language constituted direct authority for a Board of Education to take into consideration race as one of the factors in the delineation of a school zone.”
 

 The court then reversed on the law the judgment of Special Term, which invalidated the adoption by the Board of Education of the City of New York of zoning lines with respect to the attendance of children in a newly established junior high school merely because, in addition to other relevant matters, the board sought to prevent segregation within that school at its inception.
 

 The Court of Appeals affirmed the Appellate Division (14 N Y 2d 193). It pointed out at page 199: “ There can be no doubt (since
 
 Brown
 
 v.
 
 Board of Educ.,
 
 347 U. S. 483) that
 
 de jure
 
 segregation is unconstitutional. The question, however, as to whether there is an affirmative constitutional obligation to take action to reduce
 
 de facto
 
 segregation is simply not in this case. The issue, we repeat, is: May (not must) the schools correct racial imbalance ? The simple fact as to the plan adopted and here under attack is that it excludes no one from any school and has no tendency to foster or produce racial segregation.”
 

 Recently, on June 25, 1964, the Appellate Division of the Fourth Department, in
 
 Matter of Strippoli
 
 v.
 
 Bickal
 
 (21 A D 2d 365), had occasion to consider an article 78 proceeding brought by the parents of children enrolled in School No. 30 in the City of Rochester to restrain the transfer thereto of 118 pupils comprising the entire 5th and 6th grade classes of School No. 3. It appeared that the facilities at School No. 3, the student population of which was 95.3% Negro, were badly overtaxed, the most serious overcrowding of classrooms existing at the 5th and 6th grade levels where the class size ranged from 29 to 37 students as contrasted with a city-wide average of 28.4 students and a recommended size of 26; that the building itself could not accommodate all of the classes, six being held in temporary transportable classrooms upon the school playground. In comparison, School No. 30, located approximately
 
 *625
 
 2% miles away, the enrollment of which was 100% white, was new, with seven vacant classrooms, and the transfer entailed transporting the students by bus, the cost of which to the extent of 90% would be borne by the State. While the students of the 5th and 6th grade classes who were transferred from School No. 3 were accompanied by their teachers, the classes were not kept intact in the new school; the students from the two schools were integrated by reassigning some of the students from both schools to new teachers.
 

 Special Term sustained the petition by annulling the determination of the Board of Education effectuating the transfer and directed the return of the students to School No. 3. The Appellate Division (21 A D 2d 365, 367-368), however, reversed unanimously, stating: “On the basis of this record we are unable to conclude that the transfer and integration of these students were arbitrary, capricious or unreasonable acts on the part of the Board of Education and the Superintendent of Schools. There is no doubt in our minds that a substantial factor influencing the decision was the desire to reduce to some extent the racial imbalance existing in the public schools. This is apparent despite the insistence of the Superintendent of Schools that the students were not integrated but were regrouped, in fact, his insistence during cross-examination upon avoiding certain specific words and expressions reached the point of absurdity. Nevertheless, a determination of the Board of Education which is otherwise lawful and reasonable does not become unlawful merely because the factor of racial balance is accorded relevance.
 
 (Matter of Balaban
 
 v.
 
 Rubin,
 
 14 N Y 2d 193.) ”
 

 In summary, the court held in
 
 Strippoli
 
 that a plan of action by a Board of Education which is otherwise reasonable and lawful is not rendered invalid because it also attempts to correct racial imbalance in the schools. This holding applies with equal force to the case at bar, involving as it does a plan for the combination of adjoining public elementary schools six blocks apart whose contiguous attendance area zones are to be combined with certain portions of the original zones eliminated and where no busing of petitioners’ children will be required.
 

 The following tables set forth data relating to the enrollment, capacity, utilization, average class size, percentage of white students, percentage of Negro students, and percentage of Puerto Bican students for each of the two schools involved, projected as of the opening of schools in September, 1964, both before and after pairing under the community zone, pursuant to
 
 *626
 
 which Public School 92 will have only classes kindergarten and 1 and 2 and Public School 149 will have only classes kindergarten and 3, 4, 5 and 6.
 

 It is clear from the foregoing that the respondents’ plan for the combination of the attendance areas of "the two schools involved will result in many benefits to the students of each school. According to the communication from the office of the Assistant Superintendent to the parents of Public School 149, dated June 25, 1964, a copy of which was submitted to the court by the petitioners’ attorney on June 30," 1964, Public School 92 will be and, indeed, is now being renovated and additional positions and services will be supplied to both schools in accordance with the following schedule:
 

 
 *627
 
 It thus appears that in addition to the classroom teachers and other educational and professional positions in the two schools before pairing they will have the following additional positions after pairing:
 

 Public School 92 will have a physician for 3 additional hours per week.
 

 Public School 149 will have:
 

 (1) a corrective reading teacher
 

 (2) a combination of science-instrumental music position
 

 (3) a librarian
 

 (4) a programming position
 

 (5) a guidance counsellor
 

 (6) a part-time social worker
 

 (7) a part-time psychologist
 

 (8) a psychiatrist on call
 

 (9) a physician for 3 additional hours per week.
 

 In addition, both schools’ first grade classes will have a full day’s instruction of 5 hours per day, instead of 4 hours per day.
 

 Upon the entire record in this proceeding, it is clear that a very important — probably the most important — factor in the respondents’ determination was the reduction of racial imbalance in our public schools. As indicated above, however, it was not the only factor. There will, of course, be some inconvenience to petitioners’ children. Such inconvenience, however, is not of a measure sufficient to permit this court to say that the respondents’ determination was arbitrary or capricious or contrary to law. Accordingly, that determination is confirmed and the petition and supplemental petition dismissed on the merits, without costs.
 

 *
 

 Inasmuch as petitioner Peter J. Balides resides at 33-32 86th Street, Jackson Heights, his child will not attend P.S. 92.