Lester Holtzmah, J.
This is a proceeding under article 78 of the CPLR for judgment annulling a certain plan, issued by respondent Superintendent of Schools of the City of New York and adopted by respondent Board of Education of the City of New York, “which would limit Public School 148, Jackson Heights, in the County of Queens, to the classes of Kindergarten and Grades One through Two and which would require the transfer of students from Grades Three through Six attending Public School 148 to Public School 127, East Elmhurst, in the County of Queens The proceeding was originally scheduled to be heard on September 10, 1964, but was adjourned to February 2, 1965.
Petitioners allege that they are the parents of 173 children who are enrolled in P. S. 148 in the third through sixth grades and who, pursuant to respondents’ pairing plan, will be required to attend P. S. 127 as of September, 1964.
Petitioners claim that this plan is illegal. Virtually all of the grounds on which such claim is based, however, have been rejected by the Appellate Division of this Department and the Court of Appeals.
. Respondents contend, initially, that this proceeding is barred by a prior judgment which dismissed a similar petition by parents of other children enrolled in P. S. 148 for said parents’ failure to submit papers in opposition to respondents’ motion for a rehearing. (See Matter of Blumberg [Donovan], N. Y. L. J., Nov. 19,1964, p. 17, col. 8.) The court does not agree. True, a prior judgment may bar subsequent action by members of a class whose interests are “ indistinguishable ” from those of persons involved in a prior suit (Campbell v. Nassau County, 192 Misc. 821, 825, affd. 274 App. Div. 929), but this is not such a situation. Of prime significance here is the propriety of a plan as applied to infants whose ages, proximity to the schools involved and other circumstances differ. Indeed, Mr. Justice Latham, in his first memorandum in the proceeding to which respondents refer, stated that his disposition was confined “ to the specific rights of the petitioners herein named ’ ’ and ‘ ‘ that the planned compulsory transfer of the named petitioners’ children is, in their circumstances, arbitrary and unreasonable ”. (See Matter of Blumberg [Donovan], N. Y. L. J., July 13, 1964, p. 10, col. 7.)
Petitioners contend that the plan is motivated solely by racial considerations in violation of their constitutional rights and that their children will be subjected to the hazards of increased travel as well as deprived of their right to attend their neighborhood school.
*434 It is abundantly clear that the elimination, insofar as feasible, of de facto segregation is the prime object of the pairing plan. However, respondents point out that the following additional benefits will immediately result from institution of the plan: (a) reduction in utilization of the facilities in P. S. 148 from 120% to 71% with corresponding increase in P. S. 127 from 48% to only 62%; (b) reduction in average class size in each school from 36.6 (P. S. 148) and 32 (P. S. 127) to 27; and (c) increase in specialized instruction. The affidavit of Louis C. Moser, a former member of the local School Board, submitted in reply, does not refute any of respondents’ statements.
In Matter of Addabbo v. Donovcm (22 A D 2d 383, 387-388, affg. 43 Misc 2d 621), the Appellate Division of this Department wrote:
“ The pairing (or Princeton) plan was upheld when applied to three elementary schools in Malveme, Long Island (Matter of Vetere v. Mitchell, 21 A D 2d 561). Other variations of the pairing plan have been upheld (Matter of Strippoli v. Bickal, 21 A D 2d 365; Morean v. Board of Educ. of Montclair, 42 N. J. 237; Fuller v. Volk, 230 F. Supp. 25).
“ In all these cases, as well as in Matter of Balaban v. Rubin (20 A D 2d 438, affd. 14 N Y 2d 193, supra), it was held that a Board of Education is not constitutionally prohibited from taking affirmative action to reduce or eliminate de facto segregation in the public schools, or from taking race into consideration as one of the factors in the drawing or redrawing of school attendance lines in order to reduce the extreme concentration of Negro pupils in one of its public schools, where such concentration admittedly resulted, not from deliberate action of the State, but from de facto or adventitious segregation. ”
True, petitioners’ children are no longer free to attend what they now regard as their neighborhood school, but the court in Matter of Addabbo (supra, p. 388) disposed of this point as follows: “ The fact that some of the children will not go to a school nearest their homes or that they will have to go to a more distant school does not make the plan illegal or arbitrary. As we said in Matter of Balaban v. Rubin (supra), children cannot be given their choice of schools; the choice must be left to the sound discretion of the board. All the children affected by the plan will attend the school nearest their homes which accommodates their particular grades. No child will be refused admission to any school in his attendance area which accommodates his particular grade.” Moreover, it appears that the hazards of increased travel were considered by respondents. They state that those students in grades three through six who must travel *435 more than 0.7 miles will be provided free bus service and that this departure from the usual one-mile limit was promulgated since there will be a large number of students now required to travel almost one mile. In addition, traffic lights will be installed at several intersections. The court cannot say, as matter of law, that respondents were required to adopt further measures.
Petitioners urge that the plan violates sections 401 and 407 of title IY of the Civil Rights Act of 1964 (U. S. Code, tit. 42, § 2000c), section 40 of the New York Civil Rights Law and section 3201 of the New York Education Law. This is not so. (Matter of Balaban v. Rubin, 20 A D 2d 438, affd. 14 N Y 2d 193; Matter of Addabbo, supra.) The petition is dismissed.