## BROWN ET AL. *v.* BOARD OF EDUCATION
## OF TOPEKA ET AL.

NO 1.

Reargued on the question of relief April 11–14, 1955.—Opinion and judgments announced May 31, 1955.

Robert L. Carter argued the cause for appellants in No. 1. Spottswood W. Robinson, III, argued the causes for appellants in Nos. 2 and 3. George E. C. Hayes and James M. Nabrit, Jr. argued the cause for petitioners in No. 4. Louis L. Redding argued the cause for respondents in No. 5. Thurgood Marshall argued the causes for appellants in Nos. 1, 2 and 3, petitioners in No. 4 and respondents in No. 5.

On the briefs were Harold Boulware, Robert L. Carter, Jack Greenberg, Oliver W. Hill, Thurgood Marshall, Louis L. Redding, Spottswood W. Robinson, III, Charles S. Scott, William T. Coleman, Jr., Charles T. Duncan, George E. C. Hayes, Loren Miller, William R. Ming, Jr., Constance Baker Motley, James M. Nabrit, Jr., Louis H. Pollak and Frank D. Reeves for appellants in Nos. 1, 2 and 3, and respondents in No: 5; and George E. C. Hayes, James M. Nabrit, Jr., George M. Johnson, Charles W. Quick, Herbert O. Reid, Thurgood Marshall and Robert L. Carter for petitioners in No. 4.

Harold R. Fatzer, Attorney General of Kansas, argued the cause for appellees in No. 1. With him on the brief was Paul E. Wilson, Assistant Attorney General. Peter F. Caldwell filed a brief for the Board of Education of Topeka, Kansas, appellee.

S. E. Rogers and Robert McC. Figg, Jr. argued the cause and filed a brief for appellees in No. 2.

J. Lindsay Almond, Jr., Attorney General of Virginia, and Archibald G. Robertson argued the cause for appellees in No. 3. With them on the brief were Henry T. Wickham, Special Assistant to the Attorney General, T. Justin Moore, John W. Riely and T. Justin Moore, Jr.

Milton D. Korman argued the cause for respondents in No. 4. With him on the brief were Vernon E. West, Chester H. Gray and Lyman J. Umstead.

*Joseph Donald Craven,* Attorney General of Delaware, argued the cause for petitioners in No. 5. On the brief were *H. Albert Young,* then Attorney General, *Clarence W. Taylor,* Deputy Attorney General, and *Andrew D. Christie,* Special Deputy to the Attorney General.

In response to the Court's invitation, 347 U. S. 483, 495–496, *Solicitor General Sobeloff* participated in the oral argument for the United States. With him on the brief were *Attorney General Brownell, Assistant Attorney General Rankin, Philip Elman, Ralph S. Spritzer* and *Alan S. Rosenthal.*

By invitation of the Court, 347 U. S. 483, 496, the following State officials presented their views orally as *amici curiae: Thomas J. Gentry,* Attorney General of Arkansas, with whom on the brief were *James L. Sloan,* Assistant Attorney General, and *Richard B. McCulloch,* Special Assistant Attorney General. *Richard W. Ervin,* Attorney General of Florida, and *Ralph E. Odum,* Assistant Attorney General, both of whom were also on a brief. *C. Ferdinand Sybert,* Attorney General of Maryland, with whom on the brief were *Edward D. E. Rollins,* then Attorney General, *W. Giles Parker,* Assistant Attorney General, and *James H. Norris, Jr.,* Special·Assistant Attorney General. *I. Beverly Lake,* Assistant Attorney General of North Carolina, with whom on the brief were *Harry McMullan,* Attorney General, and *T. Wade Bruton, Ralph Moody* and *Claude L. Love,* Assistant Attorneys General. *Mac Q. Williamson,* Attorney General of Oklahoma, who also filed a brief. *John Ben Shepperd,* Attorney General of Texas, and *Burnell Waldrep,* Assistant Attorney General, with whom on the brief were *Billy E. Lee, J. A. Amis, Jr., L. P. Lollar, J. Fred Jones, John Davenport, John Reeves* and *Will Davis.*

*Phineas Indritz* filed a brief for the American Veterans Committee, Inc., as *amicus curiae.*

MR. CHIEF JUSTICE WARREN delivered the opinion of the Court.

These cases were decided on May 17, 1954. The opinions of that date,[1] declaring the fundamental principle that racial discrimination in public education is unconstitutional, are incorporated herein by reference. All provisions of federal, state, or local law requiring or permitting such discrimination must yield to this principle. There remains for consideration the manner in which relief is to be accorded.

Because these cases arose under different local conditions and their disposition will involve a variety of local problems, we requested further argument on the question of relief.[2] In view of the nationwide importance of the decision, we invited the Attorney General of the United

---

[1] 347 U. S. 483; 347 U. S. 497.

[2] Further argument was requested on the following questions, 347 U. S. 483, 495–496, n. 13, previously propounded by the Court:

"4. Assuming it is decided that segregation in public schools violates the Fourteenth Amendment

"(a) would a decree necessarily follow providing that, within the limits set by normal geographic school districting, Negro children should forthwith be admitted to schools of their choice, or

"(b) may this Court, in the exercise of its equity powers, permit an effective gradual adjustment to be brought about from existing segregated systems to a system not based on color distinctions?

"5. On the assumption on which questions 4 (a) and (b) are based, and assuming further that this Court will exercise its equity powers to the end described in question 4 (b),

"(a) should this Court formulate detailed decrees in these cases;

"(b) if so, what specific issues should the decrees reach;

"(c) should this Court appoint a special master to hear evidence with a view to recommending specific terms for such decrees;

"(d) should this Court remand to the courts of first instance with directions to frame decrees in these cases, and if so what general directions should the decrees of this Court include and what procedures should the courts of first instance follow in arriving at the specific terms of more detailed decrees?"

States and the Attorneys General of all states requiring or permitting racial discrimination in public education to present their views on that question. The parties, the United States, and the States of Florida, North Carolina, Arkansas, Oklahoma, Maryland, and Texas filed briefs and participated in the oral argument.

These presentations were informative and helpful to the Court in its consideration of the complexities arising from the transition to a system of public education freed of racial discrimination. The presentations also demonstrated that substantial steps to eliminate racial discrimination in public schools have already been taken, not only in some of the communities in which these cases arose, but in some of the states appearing as *amici curiae,* and in other states as well. Substantial progress has been made in the District of Columbia and in the communities in Kansas and Delaware involved in this litigation. The defendants in the cases coming to us from South Carolina and Virginia are awaiting the decision of this Court concerning relief.

Full implementation of these constitutional principles may require solution of varied local school problems. School authorities have the primary responsibility for elucidating, assessing, and solving these problems; courts will have to consider whether the action of school authorities constitutes good faith implementation of the governing constitutional principles. Because of their proximity to local conditions and the possible need for further hearings, the courts which originally heard these cases can best perform this judicial appraisal. Accordingly, we believe it appropriate to remand the cases to those courts.[3]

---

[3] The cases coming to us from Kansas, South Carolina, and Virginia were originally heard by three-judge District Courts convened under 28 U. S. C. §§ 2281 and 2284. These cases will accordingly be remanded to those three-judge courts. See *Briggs* v. *Elliott,* 342 U. S. 350.

In fashioning and effectuating the decrees, the courts will be guided by equitable principles. Traditionally, equity has been characterized by a practical flexibility in shaping its remedies [4] and by a facility for adjusting and reconciling public and private needs.[5] These cases call for the exercise of these traditional attributes of equity power. At stake is the personal interest of the plaintiffs in admission to public schools as soon as practicable on a nondiscriminatory basis. To effectuate this interest may call for elimination of a variety of obstacles in making the transition to school systems operated in accordance with the constitutional principles set forth in our May 17, 1954, decision. Courts of equity may properly take into account the public interest in the elimination of such obstacles in a systematic and effective manner. But it should go without saying that the vitality of these constitutional principles cannot be allowed to yield simply because of disagreement with them.

While giving weight to these public and private considerations, the courts will require that the defendants make a prompt and reasonable start toward full compliance with our May 17, 1954, ruling. Once such a start has been made, the courts may find that additional time is necessary to carry out the ruling in an effective manner. The burden rests upon the defendants to establish that such time is necessary in the public interest and is consistent with good faith compliance at the earliest practicable date. To that end, the courts may consider problems related to administration, arising from the physical condition of the school plant, the school transportation system, personnel, revision of school districts and attendance areas into compact units to achieve a system of determining admission to the public schools

---

[4] See *Alexander* v. *Hillman*, 296 U. S. 222, 239.

[5] See *Hecht Co.* v. *Bowles*, 321 U. S. 321, 329–330.

on a nonracial basis, and revision of local laws and regulations which may be necessary in solving the foregoing problems. They will also consider the adequacy of any plans the defendants may propose to meet these problems and to effectuate a transition to a racially nondiscriminatory school system. During this period of transition, the courts will retain jurisdiction of these cases.

The judgments below, except that in the Delaware case, are accordingly reversed and the cases are remanded to the District Courts to take such proceedings and enter such orders and decrees consistent with this opinion as are necessary and proper to admit to public schools on a racially nondiscriminatory basis with all deliberate speed the parties to these cases. The judgment in the Delaware case—ordering the immediate admission of the plaintiffs to schools previously attended only by white children—is affirmed on the basis of the principles stated in our May 17, 1954, opinion, but the case is remanded to the Supreme Court of Delaware for such further proceedings as that Court may deem necessary in light of this opinion.

*It is so ordered.*