ROY S. WYNN AND JAMES D. MARTIN, ON BEHALF OF THEMSELVES AND ALL OTHER TAXPAYERS OF THE COUNTY OF MECKLENBURG, STATE OF NORTH CAROLINA, v. TRUSTEES OF THE CHARLOTTE COMMUNITY COLLEGE SYSTEM, A BODY CORPORATE, J. MURREY ATKINS, CHAIRMAN; THOMAS M. BELK, C. A. McKNIGHT, JOHN A. McRAE, DR. E. A. BEATY, SHELDON P. SMITH, DR. THOMAS WATKINS, SR., J. MURREY ATKINS, R. L. TAYLOR, JOHN PAUL LUCAS, ADDISON H. REESE, LINN D. GARIBALDI, AND OLIVER ROWE, TRUSTEES OF CHARLOTTE COMMUNITY COLLEGE, A BODY CORPORATE; J. N. PEASE & COMPANY, INC., A NORTH CAROLINA CORPORATION, AND DICKERSON, INC., A NORTH CAROLINA CORPORATION.

(Filed 8 November, 1961.)

**1. Pleadings § 12—**

A demurrer for failure of the complaint to state a cause of action will be determined solely on the basis of whether the facts alleged in the complaint, liberally construed in favor of the pleader, are sufficient for this purpose.

**2. Taxation § 34—**

A taxpayer may maintain an action to restrain the levy of a tax on the ground that the tax is in itself illegal or invalid or is for an illegal or unauthorized purpose. G.S. 105-406.

**3. Same; Schools § 1— Trustees having statutory authority may not be restrained from establishing second unit of college on ground that single unit is more economical.**

The trustees of a community college are given statutory authority to establish more than one unit within the boundary of a county, G.S. 116-49, and therefore where the board of trustees of such college determines in the exercise of its discretion and judgment that the establishment of two separate units at separate locations within the county would afford the benefits of the college to a greater number of prospective students, and bonds for the construction of such separate units are duly authorized by the voters of the county, taxpayers may not enjoin the use of the proceeds of the bonds in establishing the second unit on the ground that it would be more economical to provide a single unit for all prospective students and that the construction of the second unit would result in a waste of tax money, since the bond or tax is not in itself illegal.

**4. Same; Constitutional Law § 4—**

Taxpayers of a county may not enjoin the construction of a second unit of a community college in the county on the ground that the board of trustees of the college were establishing separate units for the unlawful purpose of segregating the students in the two units on the basis of race, there being no allegation that plaintiffs would be affected otherwise than being subject to the ad valorem tax levied to provide funds for the payment of the bonds or allegation that any qualified prospective students had been or will be excluded from attending either college solely on the basis of race.

**5. Constitutional Law § 4—**

A constitutional question may not be raised by a person unless his rights are directly affected.

APPEAL by plaintiffs from *Sharp, Special Judge,* May 22, 1961, Special Civil Term of MECKLENBURG.

Civil action to enjoin defendants "from proceeding with the construction of Carver College" and "from the payment of public money for such construction of Carver College." At the hearing on plaintiffs' application for a temporary restraining order, defendants demurred to the complaint for that, on grounds distinctly specified, the complaint did not state facts sufficient to constitute a cause of action.

The allegations of the complaint (exclusive of the prayer for relief) are set forth in fifty-one numbered paragraphs. Plaintiffs' said allegations, summarized or quoted, are stated below.

Plaintiffs are citizens, residents and taxpayers of Mecklenburg County.

"The Trustees of the Charlotte Community College System" is a body corporate organized and existing under authority of G.S. 116-47 through G.S. 116-62. The individual defendants (hereafter referred to as the trustees) are the duly constituted trustees of the Charlotte Community College System, hereafter called "College System." The College System, as administered by said trustees, "is presently comprised of two separate and distinct college units," to wit, Charlotte College and Carver College, with student enrollments of 696 and 261, respectively, for the fall term of 1960.

Charlotte College and Carver College have been operated as segregated colleges for members of the white and Negro races, respectively. The classes of Charlotte College have been held in a public school building "formerly occupied by school children substantially all of which were of the white race." The classes of Carver College have been held in a public school building "now and formerly occupied by school children of the Negro race."

The trustees have purchased or acquired two tracts of land: (1) A tract of 267 acres, for the location and construction of Charlotte College, "in a substantially rural area away from areas primarily populated by members of the Negro race"; and (2) a tract of 50 acres for the location and construction of Carver College, "situated adjacent to an area populated primarily by members of the Negro race."

On November 8, 1960, "pursuant to an election duly authorized by law, the citizens and residents of Mecklenburg County, State of North Carolina, authorized, by a majority of those qualified and voting, the issuance by Mecklenburg County, State of North Carolina, of $975,-

000.00 in bonds and a special increase in county taxes to repay the principal and interest on said bonds and said bonds to be designated as Charlotte Community College bonds, with the proceeds to be used by the Charlotte Community College System for construction of new campuses for Charlotte College and Carver College." The bonds so authorized "have been sold, or are about to be sold, and money has been placed, or is about to be placed, at the disposal of the defendant trustees for the purpose of constructing two new college sites for Charlotte College and Carver College to serve as Community Colleges in accordance with the terms of North Carolina General Statutes 116-47 to 116-62."

The tax on all taxable property, including real and personal property owned by plaintiffs, will be specifically increased by an amount sufficient to pay the principal and interest on said bonds.

Approximately $287,000.00 of the funds from said bond issue have been allocated "for construction of initial buildings and grounds of Carver College."

J. N. Pease & Company, Inc., and Dickerson, Inc., North Carolina corporations, have contracts for the construction of the initial portion of the proposed Carver College campus. When this action was instituted (May 15, 1961), "only a small amount of work (had) begun under said contracts, in that only a small amount of grading, piping, and footings (had) been begun or completed."

The Charlotte College catalogue for 1960-1961 (Exhibit B) states "a correlated program in cooperation with North Carolina State College has been developed whereby a student may complete the first two years of engineering at Charlotte College and then transfer to North Carolina State College for the final two years, if qualified." North Carolina State College, supported by public funds and located in Raleigh, North Carolina, has "a faculty, administration, and student body substantially all of which being members of the white race."

The Carver College catalogue for 1960-1961 (Exhibit A) states: "Arrangements have been made between Carver College and the Agricultural and Technical College of Greensboro, North Carolina for a four-year co-operative program in engineering. The first two years of the program may be completed at Carver College and then the student may transfer to the Agricultural and Technical College to complete the final two years of the undergraduate work in the same branch of engineering provided the grades are satisfactory." Agricultural and Technical College, supported by public funds and located in Greensboro, North Carolina, has "a faculty, administrative personnel, and students, all, or substantially all, being members of the Negro race." Exhibit A also states: "Should serious illness occur during the

school day, students are referred to the school physician or taken to Good Samaritan Hospital." Good Samaritan Hospital, one of four major general hospitals in Charlotte, "is the only one of said general hospitals operated exclusively for members of the Negro race regularly admitting only Negro patients."

Charlotte College and Carver College "are substantially similar with respect to general purpose and general curriculum each being a substantial duplication of the other with respect to the general type of courses offered, except that a greater number of courses are offered at Charlotte College than at Carver College."

If both college units are constructed, Charlotte College, upon completion of its new campus, will continue to be operated by said trustees "as a segregated or largely segregated institution for members of the white race, with the faculty, instructors, administrative personnel, and regularly enrolled students substantially all being members of the white race"; and Carver College, upon completion of its new campus, will continue to be operated "as a segregated institution for members of the Negro race, with the faculty, instructors, administrative personnel and students all being members of the Negro race."

A large majority of students attending these colleges will reside in Mecklenburg County, will have received their preparatory training from the Charlotte and Mecklenburg County public school system, which is to all intents and purposes "a racially segregated public school system." If both proposed college units are constructed, "the graduates of the largely segregated public school system of Charlotte and Mecklenburg County will feed into a segregated Charlotte Community College System, the result of which will be an unlawful perpetuation of racial segregation of the Charlotte Community College System with the full support of the State of North Carolina."

The said trustees, in their official capacity under authority of and in behalf of the State of North Carolina, "have set upon a course of conduct to construct two separate colleges comprising the Charlotte Community College System which will have the effect of maintaining and perpetuating completely or substantially racially segregated publicly supported colleges within the said System."

The said trustees "have set upon a course of conduct whereby a library, eating areas, classroom facilities, athletic areas and administrative areas will be constructed at Charlotte College to be used as facilities of said college, all costing hundreds of thousands of dollars of public funds"; and "whereby a library, eating areas, classroom facilities, athletic areas and administrative areas will be constructed at Carver College to be used as facilities of said college, all costing hundreds of thousands of dollars of public funds."

The said trustees, "by reason of their aforesaid duplication or proposed duplication of facilities and services are acting in a manner which amounts to a manifest abuse of their discretion resulting in a greatly increased cost for such total facilities and therefore a needless waste of public funds and taxpayers' money." ". . . the construction of only one college facility under the Charlotte Community College System would be adequate and sufficient and would more efficiently discharge the purpose of the System." The tract of land obtained for the construction of Charlotte College (267 acres) contains "adequate area in which to construct needed facilities for all students enrolled in the Charlotte Community College System," and "full utilization of said tract of land would more easily and efficiently discharge the purpose of the Community College System and save hundreds of thousands of dollars of public money."

Plaintiffs allege they "bring this action as taxpayers of Mecklenburg County, State of North Carolina, and in behalf of all other taxpayers of Mecklenburg County, North Carolina, similarly situated, for an order enjoining the spending of public funds for the construction and operation of Carver College, a part of the Charlotte Community College System operating under the act hereinabove referred to, on the ground that such expenditure would be for the unconstitutional and thereby illegal purpose of continuing and operating a racially segregated public college facility in violation of the Fourteenth Amendment of the Constitution of the United States and on the ground that North Carolina General Statutes 116-47 to 116-62, as administered by the defendant trustees in their official capacity is in violation of the Fourteenth Amendment of the Constitution of the United States, and on the ground that such expenditure of public funds would be a waste of taxpayers' money brought about by a manifest abuse of discretion of the defendant trustees acting in their official capacity." Plaintiffs allege they have no adequate remedy at law and that they, as taxpayers, will suffer irreparable injury if the injunctive relief they seek is not granted.

Judgment, sustaining defendants' said demurrer and dismissing the action, was entered. Plaintiffs excepted and appealed.

*J. Charles Morris for plaintiffs, appellants.*

*Helms, Mulliss, McMillan & Johnston, E. Osborne Ayscue, Jr., and McCleneghan, Miller & Creasy for defendants, appellees.*

BOBBITT J.   The demurrer tests the sufficiency of the complaint. The rules applicable have been often stated and are well settled. *Pressly v. Walker*, 238 N.C. 732, 78 S.E. 2d 920, and cases cited; *Glover v.*

*Brotherhood,* 250 N.C. 35, 108 S.E. 2d 78, and cases cited. Our task is to determine whether plaintiffs, upon the *facts* alleged, liberally construed in their favor, have a cause of action.

The remedy of injunction is available to a taxpayer when a tax levy or assessment, or some part thereof, is challenged on the ground (1) the tax or assessment is itself illegal or invalid, or (2) for an illegal or unauthorized purpose. *Barbee v. Comrs. of Wake,* 210 N.C. 717, 719, 188 S.E. 314, and cases cited; G.S. 105-406.

Plaintiffs allege ad valorem taxes levied by Mecklenburg County will be specifically increased in the amount required to pay the principal and interest on the "Charlotte Community College Bonds." They do not challenge the validity of the bonds or of the tax levied for the payment thereof. Indeed, they allege, clearly and positively, that the bonds and tax were *duly authorized,* "with the proceeds to be used by the Charlotte Community College System for construction of new campuses for Charlotte College and Carver College."

Plaintiffs allege they will suffer irreparable injury unless injunctive relief is granted. They base this allegation solely on their status as taxpayers of Mecklenburg County. Thus, the question presented is whether plaintiffs, as taxpayers, may enjoin the use of any portion of the bond proceeds for the construction of Carver College.

"The Community College Act" of 1957 (S.L. 1957 c. 1098) is now codified as G.S. Chapter 116, Article 3, §§ 116-47 through 116-62. A "community college," as defined therein, is an educational institution dedicated primarily to the particular needs of a community or an area, offering the freshman and sophomore courses of a college of arts and sciences and/or the first or first and second year courses of a two-year technical institute of college grade, with authority to offer (in addition thereto) a variety of occupational, vocational, avocational and recreational training programs. "Such college may consist of one or more units operating within the boundaries of one county." G.S. 116-49.

The body corporate, "The Trustees of the Charlotte Community College System," as directed by its governing body, the board of trustees, established two units. The statute expressly authorized it to do so.

Plaintiffs do not challenge the use of the bond proceeds for the construction of Charlotte College on the 267-acre tract. Indeed by asserting the College System should be limited to one unit, namely, Charlotte College, they imply all proceeds from the sale of the *duly authorized* bonds should be used solely for the construction of Charlotte College. Clearly, it makes no difference, in respect of the amount of taxes plaintiffs will be required to pay, whether the bond proceeds are

used in part for the construction of Carver College or solely for the construction of Charlotte College.

Whether the College System should consist of one or more units was for determination by the board of trustees. Its primary responsibility was to provide educational facilities, at junior college level, to serve the particular needs of the community. It was well within the authority of the board of trustees, in the exercise of its discretion and judgment, to determine that a greater number of prospective students would be afforded and take advantage of the educational opportunities offered by the College System by establishing Charlotte College and Carver College at different locations and as separate units. The board of trustees made its determination prior to the bond election; and, as plaintiffs allege, voters *duly authorized* (1) the issuance of the bonds (2) the levy of the tax, and (3) the use of the bond proceeds "for construction of new campuses for Charlotte College and Carver College."

Plaintiffs allege the construction of Carver College will result in a duplication of college facilities and services and that such duplication is wasteful. In view of our decision that the board of trustees had full authority to establish Charlotte College and Carver College in different locations and as separate units, it is sufficient to say that the expenditure of public funds to provide necessary facilities and services at each unit is not an expenditure for an illegal or unauthorized purpose.

Plaintiffs, in their prayer for relief, sought to enjoin defendants "from proceeding with the construction of Carver College" and "from the payment of public money for such construction of Carver College." For the reasons stated, plaintiffs, on the facts alleged, are not entitled to such injunctive relief.

True, plaintiffs allege the use of bond proceeds for the construction of Carver College is for an illegal and unauthorized purpose on the ground Carver College will be operated as "a racially segregated public college facility in violation of the Fourteenth Amendment of the Constitution of the United States." They contend such operation would be in violation of the 1954 and 1955 decisions of the Supreme Court of the United States in *Brown v. Board of Education of Topeka,* 347 U.S. 483, 98 L. Ed. 873, 74 S. Ct. 686, 38 A.L.R. 2d 1180, and 349 U.S. 294, 99 L. Ed. 1083, 75 S. Ct. 753. The decisions in the *Brown* case were considered and discussed by this Court in 1956 in *Constantian v. Anson County,* 244 N.C. 221, 93 S.E. 2d 163. On this appeal, no further discussion of the significance of the *Brown* decisions is deemed necessary or appropriate.

Plaintiffs and all other property owners are subject to the ad valorem

tax levied to provide funds for the payment of the bonds. No fact alleged indicates plaintiffs will be otherwise affected by the construction and operation of Carver College. Upon the facts alleged, no constitutional right of plaintiffs has been denied. "A constitutional question may not be raised by one whose rights are not directly and certainly affected." 16 C.J.S., Constitutional Law § 76, p. 233. The numerous decisions cited fully support this statement.

It is noted that plaintiffs do not allege that any qualified prospective student has been or will be excluded from attending either Charlotte College or Carver College solely on the basis of race. Suffice to say if and when the constitutional rights of any person, white or Negro, are denied, a remedy is available to such person for the vindication and enforcement of such rights. Neither Charlotte College nor Carver College may be operated in such manner as to deny to any person rights guaranteed to such person by the Fourteenth Amendment to the Constitution of the United States.

Having reached the conclusion that, for the reasons stated, the facts alleged disclose plaintiffs are not entitled to injunctive relief, it is unnecessary to discuss the additional and separate grounds of demurrer asserted (1) by J. N. Pease & Company, Inc., and Dickerson, Inc., and (2) by the individual defendants. Suffice to say, the judgment of the court below, as to all defendants is affirmed.

Affirmed.