**Marcus GORDON et al.**

**v.**

**JEFFERSON DAVIS PARISH SCHOOL BOARD et al.**

**Civ. A. No. 10902.**

United States District Court,
W. D. Louisiana,
Lake Charles Division.

June 8, 1970.

A. P. Tureaud, New Orleans, La., Margrett Ford, Harvey J. Goldschmid, New York City, for plaintiffs.

Bernard N. Marcantel, Jennings, La., for defendants.

HUNTER, District Judge:

All uncertainty about the constitutional mandate of Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954) and 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083 (1955), was put to rest when in Green v. County School Board of New Kent County the Supreme Court spelled out a school board's "affirmative duty to take whatever steps might be necessary to convert to a unitary system in which racial discrimination would be eliminated root and branch," 391 U.S. 430, 437–438, 88 S.Ct. 1689, 1694, 20 L.Ed.2d 716 (1968). "Disestablish[ment of] state-imposed segregation" (at 439, 88 S.Ct. 1689) entailed "steps which promise realistically to convert promptly to a system without a 'white' school and a 'negro' school, but just schools" (at 442, 88 S.Ct. at 1696). If there could still be doubts they were answered this past year. In Alexander v. Holmes County Board of Education, the Court held that "[u]nder explicit holdings of this Court the obligation of every school district is to terminate dual school systems at once and to operate now and hereafter only unitary schools," 396 U.S. 19, 20, 90 S.Ct. 29, 24 L.Ed.2d 19 (1969). The command was once more

reaffirmed in Carter v. West Feliciana School Board, 396 U.S. 290, 90 S.Ct. 608, 609, 24 L.Ed.2d 477 (1970), requiring "relief that will at once extirpate any lingering vestiges of a constitutionally prohibited dual school system." The plan submitted by the School Board will do just that. It does the job of desegregating the school system completely.[1] We know of no plan that is more feasible or more promising in effectiveness. The plan of the School Board is attached. The alternate plan for Ward 4 is adopted rather than the primary plan; that is, Elton and Katie B. Thomas will be paired. The protracted pupil assignments under the plan approved reveal the total integration which has been effected in Jefferson Davis Parish:

PUPIL ASSIGNMENTS

| School | Black | White |
|--------|-------|-------|
| Elton High School | 273 | 336 |
| Fenton High School | 153 | 284 |
| Hathaway High School | 24 | 291 |
| Jennings Central Elementary | 185 | 385 |
| Jennings High School | 284 | 716 |
| Jennings Northside Elementary | 234 | 540 |
| Jennings Southside Elementary | 91 | 201 |
| Jennings West End Elementary | 172 | 398 |
| Lacassine (Grades 1–12) | 70 | 426 |
| Lake Arthur Elementary | 75 | 489 |
| Lake Arthur High School | 100 | 560 |
| Welsh Elementary School | 245 | 536 |
| Welsh High School | 114 | 352 |
| Welsh Roanoke | 81 | 195 |
| Katie B. Thomas | 81 | 134 |
|  | 2,182 | 5,843 |

A formal decree is appended and made a part hereof.

## APPENDIX

In the United States District Court for the Western District of Louisiana

Lake Charles Division

Marcus Gordon, et al

vs.            Civil Action

Jefferson Davis Parish      No. 10902
School Board, et al

1. Federal courts have long recognized that they should not endeavor to devise plans for desegregation for any school district when, as here, the School Board presents a feasible plan that works. Green v.

## DECREE

It is ordered, adjudged and decreed that the defendants, their agents, officers, employees and successors and all those in active concert and participation with them, be and they are permanently enjoined from discriminating on the basis of race or color in the operation of their parish school system. The plan presented by the School Board to complete the conversion to a unitary system is to be effective immediately.

## PUPIL ASSIGNMENT

The defendants shall assign all pupils to schools in accordance with the plan of desegregation submitted by defendants and set forth in the School Board's plan submitted to this Court on March 20, 1970. The alternative plan will be effectuated as to Ward 4. The protracted pupil attendance at each school is set forth on Exhibit A attached.

## PROTECTION OF PERSONS EXERCISING RIGHTS UNDER THIS DECREE

Within their authority, school officials are responsible for the protection of persons exercising rights under or otherwise affected by this decree. They shall without delay, take appropriate action with regard to any student or staff member who interferes with the successful operation of the provisions of this decree. Such interference shall include harassment, intimidation, threats, hostile words or acts, and similar behavior.

## TRANSFERS

(a) *Majority to Minority Transfer Policy.*

The defendants shall permit a student (Negro or white) attending a school in which his race is in the majority to choose to attend another school where

County School Board, 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716 (1968); Clark et al. v. Board of Education of Little Rock School District, 8th Circuit, 426 F.2d 1035, May 13, 1970.

space is available and where his race is in a minority.

(b) *Transfers for Special Needs.*

Any student who requires a course of study not offered at the school to which he has been assigned may be permitted, upon his written application at the beginning of any school term or semester, to transfer to another school which offers courses for his special needs.

(c) *Transfers to Special Classes or Schools.*

If the defendants operate and maintain special classes or schools for physically handicapped, mentally retarded, or gifted children, the defendants may allow children to transfer to such schools or classes on a basis related to the function of the special class or school. Provided that no such transfers shall be made on the basis of race or color or in a manner which tends to perpetuate a dual school system based on race or color.

(d) *Attendance Outside Parish of Residence.*

If the Parish School District grants transfers to students living in the district for their attendance at public schools outside the district, or if it permits transfers into the district of students who live outside the district, it shall do so on a non-discriminatory basis, except that it shall not consent to transfers where the cumulative effect will reduce desegregation in either district or reinforce the dual school system.

## TRANSPORTATION, SERVICES, FACILITIES, ACTIVITIES AND PROGRAMS

No student shall be segregated or discriminated against on account of race or color in any service, facility, activity, or program (including transportation, athletics, or other extracurricular activity) that may be conducted or sponsored by the school in which he is enrolled. A student attending school for the first time on a desegregated basis may not be subject to any disqualification or waiting period for participation in activities and programs, including athletics, which might otherwise apply because he is a transfer or newly assigned student. All school use or school-sponsored use of athletic fields, meeting rooms, and all other school related services, facilities, activities, and programs such as commencement exercises and parent-teacher meetings which are open to persons other than enrolled students, shall be open to all persons without regard to race or color. All special educational programs conducted by the defendants shall be conducted without regard to race or color. Bus routes and the assignment of students to buses will be designed to insure the transportation of all eligible pupils on a non-segregated and otherwise non-discriminatory basis.

## SCHOOL EQUALIZATION

In schools heretofore maintained for Negro students, the defendants shall take prompt steps necessary to provide physical facilities, equipment, courses of instruction, and instructional materials of quality equal to that provided in schools previously maintained for white students. Conditions of overcrowding, as determined by pupil-teacher ratios and pupil-classroom ratios shall, to the extent feasible, be distributed evenly between schools formerly maintained for black students and those formerly maintained for white students.

## NEW CONSTRUCTION

All school construction, school consolidation, and site selection (including the location of any temporary classrooms) in this parish shall be done with the objective of eradicating the vestiges of the dual system, and so as to prevent the recurrence of the dual school structure.

## DESEGREGATION OF FACULTY AND OTHER STAFF

The School Board shall announce and implement the following policies:

1. Effective not later than August 1, 1970, the principals, teachers, teacher-

aides and other staff who work directly with children at a school shall be so assigned that in no case will the racial composition of a staff indicate that a school is intended for black students or white students.

The school district shall, to the extent necessary to carry out this desegregation plan, direct members of its staff as a condition of continued employment to accept new assignments.

2. Staff members who work directly with children, and professional staff who work on the administrative level will be hired, assigned, promoted, paid, demoted, dismissed, and otherwise treated without regard to race, color, or national origin.

3. If there is to be a reduction in the number of principals, teachers, teacher-aides, or other professional staff employed by the school district which will result in a dismissal or demotion of any such staff members, the staff member to be dismissed or demoted must be selected on the basis of objective and reasonable non-discriminatory standards from among all the staff of the school district. In addition if there is any such dismissal or demotion, no staff vacancy may be filled through recruitment of a person of a race, color, or national origin different from that of the individual dismissed or demoted, until each displaced staff member who is qualified has had an opportunity to fill the vacancy and has failed to accept an offer to do so.

Prior to such a reduction, the school board will develop or require the development of nonracial objective criteria to be used in selecting the staff member who is to be dismissed or demoted. These criteria shall be available for public inspection and shall be retained by the school district. The school district also shall record and preserve the evaluation of staff members under the criteria.

Such evaluation shall be made available upon request to the dismissed or demoted employee.

"Demotion" as used above includes any re-assignment (1) under which the staff member receives less pay or has less responsibility than under the assignment he held previously, (2) which requires a lesser degree of skill than did the assignment he held previously, or (3) under which the staff member is asked to teach a subject or grade other than one for which he is certified or for which he has had substantial experience within a reasonably current period. In general and depending upon the subject matter involved, five years is such a reasonable period.

## REPORTS TO THE COURT

The defendants shall submit to this Court the following reports in accordance with the dates indicated:

Within 15 days after the opening of schools for the fall semester of each year, a report specifying:

1. The name, race, and grade or subject taught for all teachers employed the previous school year but not re-employed for the current school year, and the reason for their termination. The same report is to be made for other school employees.

2. The number of vacancies created by expansion of faculties or staff, and the name, race and grade or subject taught by each teacher employed to fill such vacancies.

3. The number of students, by race, in each grade of each school.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana on this the 8th day of June, 1970.

/s/ Edwin F. Hunter, Jr.
UNITED STATES DISTRICT JUDGE