John E. HART et al., Plaintiffs,

v.

COUNTY SCHOOL BOARD OF ARLINGTON COUNTY, VIRGINIA, et al., Defendants.

Civ. A. No. 193–70–A.

United States District Court, E. D. Virginia, Alexandria Division.

Aug. 10, 1971.

S. W. Tucker, Henry L. Marsh, III, Hill, Tucker & Marsh, Richmond, Va., Robert M. Alexander, Arlington, Va., Larry Latto, Allison W. Brown, Jr., Washington, D. C., Jack Greenberg, James M. Nabrit, III, Norman Chachkin, New York City, for plaintiffs.

R. D. McIlwaine, III, Richmond, Va., James H. Simmonds, Gregory Ulrich Evans, Arlington, Va., for defendants.

## MEMORANDUM OPINION AND ORDER

OREN R. LEWIS, District Judge.

The black plaintiffs brought this suit in May of 1970 [1] to require the Arlington County School Board to adopt and forthwith implement a plan which would promptly and efficiently complete the elimination of racial segregation in the public schools of Arlington County.

The Arlington County School Board did just that—in June of 1971—when it adopted the plan for desegregating Drew and Hoffman-Boston Elementary Schools.

Briefly stated, the plan provides that the students in grades one through six of Drew and Hoffman-Boston will be assigned to elementary schools throughout the Arlington school system. Kindergartens will continue at both Drew and Hoffman-Boston. No present school boundaries will be changed. A school will not be assigned students in such numbers that its total enrollment will exceed its rated capacity by more than five per cent. Every elementary school will be integrated. Transportation will be furnished where necessary.

The Drew building will be used for a model school, to be operated on an integrated basis—for the Montesorri pre-kindergarten, the Drew kindergarten, adult education and for other school programs. The Hoffman-Boston building will be used for the Hoffman-Boston pre-kindergarten, kindergarten and for the seventh grade of the Thomas Jefferson (integrated) Junior High School.

The School Board has, as shown by the table appended hereto, eliminated the last vestiges of the old dual school system and has converted to a unitary system throughout the County.

No one seriously questions that the primary responsibility for solving these problems rests with the School Board (Brown II, 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083 (1955))—or that it has the duty to take whatever steps might be necessary to convert to a unitary system (Green v. County School Board, 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716 (1968))—or that it must do it on or before July 1, 1971 (Adams v. School District Number 5, 444 F.2d 99 (4th Cir. June 10, 1971).

Paraphrasing Judge Craven in Allen v. Asheville City Board of Education, 434 F.2d 902 (4th Cir. 1970), it is plain to see that the Arlington County School Board has gone further down the road toward desegregation than any school board has ever been compelled to go, and probably much further than could be required.

Nevertheless, the plaintiffs fault the School Board's plan [2]—They say all of the burdens and inconveniences of the desegregation process are imposed entirely on the black children and their parents—White children will continue to do just what they are doing—attending schools in their own neighborhoods, while the black children will be required to spend about an hour a day being bused to and from schools away from their neighborhoods—They say this will have an adverse effect on the black children by causing them to believe that they are different from white children—that they are no good.

They further say the closing of the black schools amounts to an unlawful discrimination against the black children—when the required desegregation can be accomplished by other means, such as interchanging a like number of black and white children between the adjacent white schools—or, if necessary, between all of the other elementary schools in the County.

This Court rejects the plaintiffs' contention that the Arlington County School Board unlawfully discriminated against the black children when it desegregated the Drew and Hoffman-Boston Elementary Schools.

1. The hearing in this case was deliberately postponed awaiting the decision of the Supreme Court in the then pending school cases.

2. Their original complaint was amended on the morning of this hearing.

" * * * [T]he mechanics of integration, where the purpose is obviously to implement the Brown II principle and effectively achieves that end, is ordinarily a matter within the discretion of school administrators. The question is not whether we might have selected different schools for extinction, nor even whether substantial evidence supports the Board's decision, but is instead whether the Board's decision is so plainly unfair that it clearly amounts to invidious discrimination in violation of the equal protection clause." (Allen, supra.)

On the record here made, this Court is unable to perceive of any invidious discrimination.

■ In order to accomplish racial balance[3] and to establish a unitary system, the School Board found it necessary to transfer the Drew and Hoffman-Boston students—grades one through six—to other elementary schools throughout the County where the added students would not cause the enrollment to exceed the school's rated capacity by more than five per cent.

The busing time from home to school averages twenty-two minutes, with a maximum of not more than twenty-nine minutes—The added transportation costs were estimated to be $11,000.00 per year —Crosstown busing black students to the white schools and a like number of white students to the Drew and Hoffman-Boston schools would cost more than $130,000.00 per year—Thirteen new buses, plus drivers, would be required.

The plaintiffs' claim that all the burdens and inconveniences of desegregation are imposed entirely on the black children and their parents is not supported by the evidence in this case.

Out of some 11,233 pupils enrolled in Arlington County's elementary school system—eleven per cent of whom are black—twenty-five per cent are now being bused from their homes to their schools—All of the seventh grade white students residing in the Thomas Jefferson High School attendance area are now being bused to the Hoffman-Boston school—white students from throughout the County will be bused to the Drew Model Elementary School.

Bus transportation has been an integral part of the public education system for years—Its permissible scope has not been determined by the Supreme Court of the United States—or that it must be equally shared between the races (Allen v. Asheville City Board of Education, supra). The Supreme Court has determined, however, that the busing of students to implement desegregation may be used when the time or distance of travel is not so great as to risk either the health of the children or significantly impinge on the educational process. See Swann v. Charlotte-Mecklenburg Board of Education, supra.

If Arlington is to convert to a unitary system, and the Supreme Court had decreed that it must—there will of necessity be some busing.

The limited busing of the Drew-Hoffman-Boston children, here required, risks neither the health of the children or significantly impinges on the educational process.

■ In a somewhat similar factual situation, the Court of Appeals held that the pattern of assignment as set forth in the Asheville plan, implemented by free school bus transportation, did not violate the equal protection clause of the Fourteenth Amendment.

This Court so holds here.

The Arlington County School Board has now fully complied with the Supreme Court decision in Brown I—A unitary school system as required by Green and Alexander[4] has been established—

---

3. The constitutional demand to desegregate schools does not mean that every school in every community must always reflect the racial composition of the school system as a whole. Swann v. Charlotte-Mecklenburg Board of Education, 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971).

4. Alexander v. Holmes County Board of Education, 396 U.S. 19, 90 S.Ct. 29, 24 L.Ed.2d 19 (1969).

Arlington will have neither black nor white schools—just schools.

This will be accomplished without abolishing the neighborhood school concept—Both Drew and Hoffman-Boston will continue to be used for school purposes—pre-kindergarten, kindergarten, as a model integrated elementary school—adult education and for integrated junior high school (seventh grade, Thomas Jefferson).

The plan adopted by the Arlington County School Board on June 28, 1971 for the desegregation of Drew and Hoffman-Boston Elementary Schools, and the establishment of a unitary system throughout the County, is hereby approved.

The Clerk will send a copy of this memorandum opinion and order to all counsel of record.

## APPENDIX

ARLINGTON PUBLIC SCHOOLS
Department of Research                                                    June 25, 1971

ELEMENTARY PUPIL MEMBERSHIP--Est. 1971-72
GRADES 1 thru 6 Only
WIth DREW & HOFFMAN-BOSTON - Grs. 1-6
Housed Outside Their Present Elementary Districts

| SCHOOLS | Memb. Est. Total 1971-72 | NEGRO PUPILS | | | Est. New Total 1971-72 | Rated Capacity | Per-Cent Negro | Per-Cent Over Capacity |
|---|---|---|---|---|---|---|---|---|
| | | No. Negro Now | Add From Drew and H-B | Total Negro 71-72 | | | | |
| Abingdon | 470 | 11 | 52 | 63 | 522 | 675 | 12.1% | - |
| Ashlawn | 358 | 14 | 30 | 44 | 388 | 385 | 11.3 | 1% |
| Barcroft | 314 | 3 | 39 | 42 | 353 | 350 | 11.9 | 1 |
| Barrett | 410 | 3 | -0- | 3 | 410 | 375 | 0.7 | 9 |
| Claremont | 408 | 5 | 49 | 54 | 457 | 450 | 11.8 | 2 |
| Clay-Fillmore | 300 | 6 | 27 | 33 | 327 | 325 | 10.1 | 1 |
| Custis | 253 | -0- | 34 | 34 | 287 | 300 | 11.8 | - |
| Drew | 590 | - | - | - | -0- | | | |
| Fairlington | 309 | 8 | 32 | 40 | 341 | 350 | 11.7 | - |
| Ft. Myer | 277 | 50 | -0- | 50 | 277 | 425 | 18.1 | - |
| Geo. Mason | 69 | 12 | -0- | 12 | 69 | 70 | 17.4 | - |
| Glebe | 421 | 89 | -0- | 89 | 421 | 500 | 21.1 | - |
| Glencarlyn | 439 | 35 | 7 | 42 | 446 | 425 | 9.4 | 5 |
| Henry | 553 | 100 | -0- | 100 | 553 | 632 | 18.1 | - |
| Hoff-Boston | 114 | - | - | - | -0- | - | | |
| Jackson | 408 | 2 | 12 | 14 | 420 | 400 | 3.3 | 5 |
| Jamestown | 489 | -0- | 66 | 66 | 555 | 575 | 11.9 | - |
| Key | 666 | 13 | 11 | 24 | 677 | 645 | 3.5 | 5 |
| Madison | 263 | -0- | 36 | 36 | 299 | 325 | 12.0 | - |
| Maury | 156 | 3 | 17 | 20 | 173 | 175 | 11.6 | - |
| McKinley | 323 | 13 | 30 | 43 | 353 | 425 | 12.2 | - |
| Nottingham | 496 | 2 | 28 | 30 | 524 | 500 | 5.7 | 5 |
| Nat'l Orth. | 5 | - | - | -0- | 5 | | | |
| Oakridge | 519 | 29 | 37 | 66 | 556 | 705 | 11.9 | - |
| Page | 326 | 2 | 42 | 44 | 368 | 425 | 12.0 | - |
| Randolph | 435 | 8 | 46 | 54 | 481 | 475 | 11.2 | 1 |
| Reed | 510 | 77 | -0- | 77 | 510 | 550 | 15.1 | - |
| Taylor | 586 | 59 | 10 | 69 | 596 | 650 | 11.6 | - |
| Tuckahoe | 465 | 2 | 58 | 60 | 523 | 500 | 11.5 | 5 |
| Woodmont | 301 | -0- | 41 | 41 | 342 | 450 | 12.0 | - |
| TOTAL: | 11,233 | 546 | 704 | 1,250 | 11,233 | -- | 11.1% | - |

[A4290]