Joseph F. Hawkins, J.
In emulation of Serrano v. Priest (5 Cal. 3d 584) plaintiff, alleging that he is an aggrieved taxpayer and parent, seeks a judgment declaring unconstitutional New York’s existing legislative and constitutional provisions for levying and distributing school taxes.
Named as defendants are the State of New York’s Comptroller, Attorney-General, Commissioner of Taxation and Finance, and Commissioner of Education; also, the Board of Education of Lakeland Central School District No. 1 (School District), and the Town of Yorktown (Town).
The defendants, save the School District and the Town, are represented by the Attorney-General who moves on behalf of the State-defendants, including himself, to dismiss the complaint on several grounds, inter alia, for general insufficiency, and the plaintiff’s lacking the requisite status to initiate a class action. *805 The School District, represented by its own counsel, similarly moves to dismiss the complaint, contending in addition to general insufficiency that the action, in reality, is a taxpayer’s action which is not maintainable under section 51 of the General Municipal Law. The Town moves on similar , grounds, but includes an additional ground, to wit: lack of jurisdiction since it is mandated to collect school taxes, etc., by the Westchester County Administrative Code (L. 1948, ch. 852, as amd.).
I have, of course, read with considerable interest and studied the opinions in Serrano (supra) both the initial opinion, dated August 30, 1971, and the second entitled ‘ ‘ modification of opinion”, dated October 21, 1971. Despite the former’s length — consisting of no less than 65 pages — I deem it necessary to consider only the concluding portions which -discuss two crucial opinions recently rendered by the United States Supreme Court: McInnis v. Shapiro (293 F. Supp. 327, affd. sub nom. McInnis v. Ogilvie, 394 U. S. 322) and Burruss v. Wilkerson (310 F. Supp. 572, affd. 397 U. S. 44).
The United States Supreme Court in both aforesaid opinions sustained the two respective Circuit Courts of Appeals’ determinations of constitutionality, with Mr. Justice Douglas twice dissenting. In the former, the dissenting Justice stated that he believed it should be set down for oral argument; in Burruss, he was joined by Mr. Justice White, in holding that “ probable jurisdiction should be noted and the case set for oral argument.”
Thus the applicable law, pronounced within the last two years by paramount judicial authority, the United States Supreme Court, is that the prevailing State and local legislative patterns for levying and disbursing taxes to defray the cost of public education obtaining in those two States of the Union are not unconstitutional.
In Serrano, to justify holding contrary to McInnis and Burruss, the Supreme Court of California rationalized that where an appeal lies as a matter of right to the United States Supreme Court, if the latter disposes of such -appeals by Per Curiam opinions, it is akin merely to granting or denying certiorari. In further support of such view, Serrano contains a protracted discussion, coupled with extensive footnotes, quoting the seminal law review article by Frankfurter and Landis, The Business of the Supreme Court at October Term 1929 (44 Harv. L. Rev. 1) and Stern and Gressman on Supreme Court Practice, inter alia, on the significance of a Per Curiam affirmance by the United States Supreme Court where there is “ obligatory jurisdiction.”
To accept such view, in my opinion, is to demean the United *806 States Supreme Court. In Burruss, eminent counsel appeared amici curiae for concerned organizations of national repute: Ramsey Clark, former Attorney General of the United States for the National Education Association and the Urban Coalition; Joseph L. Ranh, Jr., et al., for the American Federation of Labor-Congress of Industrial Organizations and the Western Center on Law and Poverty; and Professor Carl Rachlin, of the Fordham Urban Law Center, appeared on behalf of the appellants.
In Mclnnis, the brief in main was filed by the Cook County Legal Assistance Foundation and the Community Legal Council, with briefs amici curiae by Professor John E. Coons of the University of California; Joseph L. Rauh, Jr., again appeared on behalf of the American Federation of Labor, with Benjamin V. Cohen, of counsel. Additionally, there was a brief amicus by Arthur H. Dean, representing the Urban Coalition and the National Education Association, and similar briefs on behalf of such concerned and public-interest groups as the San Francisco Neighborhood Legal Assistance Foundation, the American Jewish Congress, National Association of Social Workers, and the League of Women Voters of Illinois.
Any doubts that these participants zealously and capably sought to impress the court that momentous issues were involved are dissipated by examining the records on appeal to the United States Supreme Court in both Mclnnis and Burruss. To illustrate, Professor • Coons informed the United States Supreme Court that there were no less than six similar cases pending and that the issues being presented were “immeasurably great.”
Since both Mclnnis and Burruss were appeals from Federal Courts of Appeals, his amicus brief pointedly stressed that it was ‘ ‘ not a certiorari case. ” It further offered various alternative formulae for apportioning school taxes and State aid, which the court could consider and apply, if so minded. To convince the court of the importance and gravity of the issues, it urged:
‘ ‘ For three years we have engaged collectively in research and analysis of the issues presented by this case.”
Significantly, in Burruss, Mr. Ranh’s brief advised the court: “ Lawyers affiliated with the Center [The Western Center on Law and Poverty] are counsel for plaintiffs in Serrano v. Priest, No. 938254, Superior Court, County of Los Angeles, similar to the case now before this court. ’ ’
It is thus abundantly clear that the United States Supreme Court was more than adequately alerted that the issues to be reviewed were neither mundane nor insignificant; nevertheless, *807 it sustained the two Circuit Courts of Appeals by Per Curiam opinions. The afore-mentioned dissents further indicate that these appeals were not treated cavalierly by that court.
Reverting to Serrano, the majority’s discussions of Mclnnis and Burruss, in my opinion, are largely dicta and their extended comments gratuitous. Involving merely a motion to dismiss a complaint for general insufficiency, the latter portions of that decision, I believe, are speculations and extrapolations as to what prompted the United States Supreme Court twice to affirm in such terse manner.
To endeavor to extract revelatory, arcane insights from the bare bones of these two affirmances — with dissents — is to indulge in a form of judicial augury. The abiding judicial realities are that these very challenges of unconstitutionality have recently been twice reviewed and rejected by the United States Supreme Court. I do not believe it is within the competence of a nisi prius State court to presume to explain the Supreme Court’s unexpressed thinking; its conclusions and holdings are sufficient unto themselves.
I, furthermore, take judicial notice that the United States Supreme Court is quite capable of expounding its views when so inclined; also, that that learned court does not require pronouncements from intermediary surrogates.
The applicable law is contained in McInnis and Burruss. If they are no longer to be controlling authorities, their demise should be proclaimed by the United States Supreme Court. Surely decisions so recently rendered should not be deemed hoary precedents, so attenuated by age as to be no longer viable— and, indeed, not by Special Term.
The opinion by the Circuit Court of Appeals in Mclnnis contains a full consideration of the myriad problems attendant upon existing methods and techniques of levying and distributing school taxes. In Burruss, the lower appellate court considered a more aggravated misallocation of funds, so much so that in sustaining the constitutionality of Virginia’s laws, that Circuit Court commended to the General Assembly of that State that it ‘1 come to their relief. ’ ’ Unquestionably, in view of these two Circuits 'Courts of Appeals’ opinions, the United States Supreme Court was amply apprised that awesome problems were posed; two Supreme Court Justices dissented and opted for more comprehensive reviews.
It should be further noted that Serrano does not dispose of that controversy on the merits for it merely holds that the complaint states a legally sufficient cause of action and directs those *808 defendants to serve their answer within a reasonable time and thus join issue. This, indeed, is a tenuous reed upon which to sustain the instant complaint and thereby further open the floodgates.
Serrano’s subsequent “ modification of opinion ”, undoubtedly prompted by the repercussions caused by the original opinion, sought to assuage the manifold misapprehensions it engendered by cautioning: “We emphasize, that our decision is not a final judgment on the merits. ’ ’
Presumably anticipating a final determination of unconstitutionality “on the merits ”, the amended opinion sought to blunt the impact of its tentative holding by advising the trial court that it could temper such consequences by making certain that “any judgment ” provide that the “ existing system is to remain operable until an appropriate new system, which is not violative of equal protection of the laws, can be put into effect ”, having alluded previously to the procedural techniques in Brown v. Board of Educ. (349 U. S. 294). This would, of course, permit a more “ orderly transition ” if Serrano or a similar case is ultimately and conclusively affirmed.
There is an additional compelling factor for holding the complaint legally insufficient: to hold otherwise, pending a definitive determination as to unconstitutionality, I believe, would be to render a grievous, if not irreparable disservice to public school education. Upon the oral argument of this motion, the court was advised by counsel for the School District that the market for its school bonds, as well as those of other districts, was in a state of turmoil as a consequence of the action at bar. Many contemplated school construction projects, it was urged, are in jeopardy as a result of the refusal of municipal bonding attorneys to render the necessary certification as to no pending litigation which would impair the validity of the bond issue, etc.— a sine qua non for their marketability.
Unless and until the United States Supreme Court reverses or modifies Mclnnis and Burruss, I see no legal virtue championed or laudable judicial purpose served by placing the sword of Damocles over school bond financing in this State for the next several years.
Serrano (supra) and the more recent Van Dusartz v. Hatfield (U. S. Dist. Ct., Minn., Oct. 12, 1971) seem to me to be exercises in a forensic “ game plan.” I must confess an almost irresistible urge to join the fray by penning paeans of praise for public education and to dilate upon the inequities of existing modalities for financing public school education. It takes little *809 ingenuity to illustrate such disparities, reduced to the last mill.
The New York Times, in its Annual Education Review (Jan. 10, 1972) in conjunction with its discussion of Serrano (supra), published “A Statistical Primer on Public Elementary and Secondary Education in the United States” (p. 2E), a most excellent and extraordinarily comprehensive tabulation containing no less than 19 pertinent categories. That statistical chart affords a more than ample basis upon which to make a diagnosis that the patient is, indeed, ill; but under our system of law, the United States Supreme 'Court must be called in as the consulting specialist to perform the surgical procedure. Although it has previously refused to do so, perhaps a new patient will yield a contrary diagnosis and prognosis, or the Court of Appeals will step into the breach.
Lest the quintessence of my holding be misconstrued, I yield to none in an abiding concern for universally uniform excellence and for adequate and equitable funding of public school education. It may well be that existing systems for financing education are vestigial, inadequate and unfair. There remains, however, an equivalent reverence for the “rule of law;” if august changes are to be wrought they will have to be fashioned by more supreme authority .
‘1 One scholar, one dollar ” — a suggested variant of the “ one man, one vote ” doctrine proclaimed in Baker v. Carr (369 U. S. 186) —may well become the law of the land. I submit, however, that to do so is the prerogative and within the “ territorial imperative ” of the Legislature or, under certain circumstances, of the United States Supreme Court.
I have noted but have not reached the several other grounds offered by the defendants in support of their motions, in view of my holding that the complaint under existing, paramount law does not state a cause of action.
Accordingly, the several motions by the defendants to dismiss the complaint are granted.