Justice Stevens,
dissenting.
While I join Justice Breyer’s eloquent and unanswerable dissent in its entirety, it is appropriate to add these words.
There is a cruel irony in The Chief Justice’s reliance on our decision in Brown v. Board of Education, 349 U. S. 294 *799 (1955). The first sentence in the concluding paragraph of his opinion states: “Before Brown, schoolchildren were told where they could and could not go to school based on the color of their skin.” Ante, at 747. This sentence reminds me of Anatole France’s observation: “[T]he majestic equality of the la[w],. . . forbid[s] rich and poor alike to sleep under the bridges, to beg in the streets, and to steal their bread.”[1] The Chief Justice fails to note that it was only black schoolchildren who were so ordered; indeed, the history books do not tell stories of white children struggling to attend black schools.[2] In this and other ways, The Chief Justice rewrites the history of one of this Court’s most important decisions. Compare ante, at 746 (“history will be heard”), with Brewer v. Quarterman, 550 U. S. 286, 275 (2007) (Roberts, C. J., dissenting) (“It is a familiar adage that history is written by the victors”).
The Chief Justice rejects the conclusion that the racial classifications at issue here should be viewed differently than others, because they do not impose burdens on one race alone and do not stigmatize or exclude.[3] ****8The only justification for *800 refusing to acknowledge the obvious importance of that difference is the citation of a few recent opinions — none of which even approached unanimity — grandly proclaiming that all racial classifications must be analyzed under “strict scrutiny.” See, e.g., Adarand Constructors, Inc. v. Peña, 515 U. S. 200, 227 (1995). Even today, two of our wisest federal judges have rejected such a wooden reading of the Equal Protection Clause in the context of school integration. See 426 F. 3d 1162, 1193-1196 (CA9 2005) (Kozinski, J., concurring); Comfort v. Lynn School Comm., 418 F. 3d 1, 27-29 (CA1 2005) (Boudin, C. J., concurring). The Court’s misuse of the three-tiered approach to equal protection analysis merely reconfirms my own view that there is only one such Clause in the Constitution. See Craig v. Boren, 429 U. S. 190, 211 (1976) (concurring opinion).[4] **4
If we look at cases decided during the interim between Brown and Adarand, we cansee how a rigid adherence to *801 tiers of scrutiny obscures Brown’s clear message. Perhaps the best example is provided by our approval of the decision of the Supreme Judicial Court of Massachusetts in 1967 upholding a state statute mandating racial integration in that State’s school system. See School Comm. of Boston v. Board of Education, 352 Mass. 693, 227 N. E. 2d 729.[5] ***5 Rejecting arguments comparable to those that the plurality accepts today,[6] that court noted: “It would be the height of irony if the racial imbalance act, enacted as it was with the laudable purpose of achieving equal educational opportunities, should, by prescribing school pupil allocations based *802 on race, founder on unsuspected shoals in the Fourteenth Amendment.” Id., at 698, 227 N. E. 2d, at 733 (footnote omitted).
Invoking our mandatory appellate jurisdiction,[7] the Boston plaintiffs prosecuted an appeal in this Court. Our ruling on the merits simply stated that the appeal was “dismissed for want of a substantial federal question.” School Comm. of Boston v. Board of Education, 389 U. S. 572 (1968) (per curiam). That decision not only expressed our appraisal of the merits of the appeal, but it constitutes a precedent that the Court overrules today. The subsequent statements by the unanimous Court in Swann v. Charlotte-Mecklenburg Bd. of Ed., 402 U. S. 1, 16 (1971), by then-justice Rehnquist in chambers in Bustop, Inc. v. Los Angeles Bd. of Ed., 439 U. S. 1380, 1383 (1978), and by the host of state-court decisions cited by Justice Breyer, see post, at 825-828,[8] were *803 fully consistent with that disposition. Unlike today’s decision, they were also entirely loyal to Brown.
The Court has changed significantly since it decided School Comm, of Boston in 1968. It was then more faithful to Brown and more respectful of our precedent than it is today. It is my firm conviction that no Member of the Court that I joined in 1975 would have agreed with today’s decision.

 Le Lys Rouge (The Red Lily) 95 (W. Stephens transí. 6th ed. 1922).

 See, e.g., J. Wilkinson, From Brown to Bakke 11 (1979) (“Everyone understands that Brown v. Board of Education helped deliver the Negro from over three centuries of legal bondage”); Black, The Lawfulness of the Segregation Decisions, 69 Yale L. J. 421, 424-425 (1960) (“History, too, tells us that segregation was imposed on one race by the other race; consent was not invited or required. Segregation in the South grew up and is kept going because and only because the white race has wanted it that way — an incontrovertible fact which in itself hardly consorts with equality”).

 I have long adhered to the view that a decision to exclude a member of a minority because of his race is fundamentally different from a decision to include a member of a minority for that reason. See, e. g., Adarand Constructors, Inc. v. Peña, 515 U. S. 200, 243, 248, n. 6 (1995) (Stevens, J., dissenting); Wygant v. Jackson Bd. of Ed., 476 U. S. 267, 316 (1986) (same). This distinction is critically important in the context of education. While the focus of our opinions is often on the benefits that minority schoolchildren receive from an integrated education, see, e. g., ante, at 761 (Thomas, J., concurring), children of all races benefit from integrated *800 classrooms and playgrounds, see Wygant, 476 U. S., at 316 (“[T]he fact that persons of different races do, indeed, have differently colored skin, may give rise to a belief that there is some significant difference between such persons. The inclusion of minority teachers in the educational process inevitably tends to dispel that illusion whereas their exclusion could only tend to foster it”).

 The Chief Justice twice cites my dissent in Fullilove v. Klutznick, 448 U. S. 448 (1980). See ante, at 720, 730-731. In that case, I stressed the importance of confining a remedy for past wrongdoing to the members of the injured class. See 448 U. S., at 539. The present cases, unlike Fullilove but like our decision in Wygant, 476 U. S. 267, require us to “ask whether the Boardfs’] action[s] advancEe] the public interest in educating children for the future,” id,., at 313 (Stevens, J., dissenting) (emphasis added). See ibid. (“In my opinion, it is not necessary to find that the Board of Education has been guilty of racial discrimination in the past to support the conclusion that it has a legitimate interest in employing more black teachers in the future”). See also Adarand, 515 U. S., at 261-262 (Stevens, J., dissenting) (“This program, then, if in part a remedy for past discrimination, is most importantly a forward-looking response to practical problems faced by minority subcontractors”).

 The Chief Justice states that the Massachusetts racial imbalance Act did not require express classifications. See ante, at 739, n. 16. This is incorrect. The Massachusetts Supreme Judicial Court expressly stated:
“The racial imbalance act requires the school committee of every municipality annually to submit statistics showing the percentage of nonwhite pupils in all public schools and in each school. Whenever the board finds that racial imbalance exists in a public school, it shall give written notice to the appropriate school committee, which shall prepare a plan to eliminate imbalance and file a copy with the board. ‘The term “racial imbalance” refers to a ratio between nonwhite and other students in public schools which is sharply out of balance with the racial composition of the society in which nonwhite children study, serve and work. For the purpose of this section, racial imbalance shall be deemed to exist when the per cent of nonwhite students in any public school is in excess of fifty per cent of the total number of students in such school.’ ” 352 Mass., at 695, 227 N. E. 2d, at 731.

 Compare ante, at 746 (“It was not the inequality of the facilities but the fact of legally separating children on the basis of race on which the Court relied to find a constitutional violation in 1954”), with Juris. Statement in School Comm. of Boston v. Board of Education, O. T. 1967, No. 759, p. 11 (“It is implicit in Brown v. Board of Education[,] 347 U. S. 483 [(1954)], that color or race is a constitutionally impermissible standard for the assignment of school children to public schools. We construe Brown as endorsing Mr. Justice Harlan’s classical statement in Plessy v. Ferguson, 163 U. S. 537, 559 [(1896) (dissenting opinion)]: ‘Our Constitution is color-blind, and neither knows nor tolerates classes among citizens’”).

 In 1968 our mandatory jurisdiction was defined by the provision of the 1948 Judicial Code then codified at 28 U. S. C. § 1257, see 62 Stat. 929; that provision was repealed in 1988, see 102 Stat. 662.

 For example, prior to our decision in School Comm, of Boston, the Illinois Supreme Court had issued an unpublished opinion holding unconstitutional a similar statute aimed at eliminating racial imbalance in public schools. See Juris. Statement in School Comm, of Boston v. Board of Education, O. T. 1967, No. 759, at 9 (“Unlike the Massachusetts Court, the Illinois Supreme Court has recently held its law to eliminate racial imbalance unconstitutional on the ground that it violated the Equal Protection Clause of the Fourteenth Amendment”); ibid., n. 1. However, shortly after we dismissed the Massachusetts suit for want of a substantial federal question, the Illinois Supreme Court reversed course and upheld its statute in the published decision that Justice Breyer extensively quotes in his dissent. See Tometz v. Board of Ed., Waukegan City School Dist. No. 61, 39 Ill. 2d 593, 237 N. E. 2d 498 (1968). In so doing, the Illinois Supreme Court acted in explicit reliance on our decision in School Comm. of Boston. See 39 Ill. 2d, at 599-600, 237 N. E. 2d, at 502 (“Too, the United States Supreme Court on January 15,1968, dismissed an appeal in School Committee of Boston v. Board of Education, (Mass. 1967) 227 N. E. 2d 729, which challenged the statute providing for elimination of racial imbalance in public schools ‘for want of a substantial federal question.’ 389 U. S. 572”).