**UNITED STATES of America, Plaintiff-Appellant-Cross-Appellee,**

v.

**UNIFIED SCHOOL DISTRICT NO. 500, KANSAS CITY (WYANDOTTE COUNTY), KANSAS, et al., Defendants-Appellees-Cross-Appellants.**

**Nos. 77–2100, 77–2101.**

United States Court of Appeals, Tenth Circuit.

Argued April 19, 1979.

Decided Nov. 19, 1979.

Rehearing Denied Jan. 11, 1980.

Joel L. Selig, Dept. of Justice, Washington, D. C. (Drew S. Days, III, Asst. Atty. Gen., Washington, D. C., James P. Buchele, U. S. Atty., Topeka, Kan., and Brian K. Landsberg, Dept. of Justice, Washington, D. C., on the brief), for plaintiff-appellant-cross-appellee.

James R. Goheen of McAnany, Van Cleave & Phillips, P. A., Kansas City, Kan. (Bill E. Fabian of McAnany, Van Cleave & Phillips, P. A., Kansas City, Kan., on the brief), for defendants-appellees-cross-appellants.

Before SETH, Chief Judge, and DOYLE and LOGAN, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

This case was filed on May 18, 1973. It is a school desegregation case from Kansas City, Kansas. It was brought by the Attorney General on behalf of the United States pursuant to Title IV of the Civil Rights Act of 1964, 42 U.S.C. § 2000c–6(a) and (b), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.,* and, of course, the Fourteenth Amendment to the Constitution of the United States.

The defendant, Unified School District No. 500, is a public school district organized under the laws of Kansas and is located in Wyandotte County, Kansas. The plaintiff alleges that the defendant school district is an employer within the meaning of 42 U.S.C. § 2000e(b). The individual defendants are the Superintendent of Education of the schools and the members of the Board of Education of the School District.

The government alleged that the defendants have engaged in racial discrimination in the operation of Unified School District No. 500 in violation of the laws cited above. The complaint also alleges the existence of racial discrimination in the assignment of faculty and staff members among the various schools, and that all of this has been done on a racially segregated basis. It is charged, in addition, that the defendants have refused to take steps to correct the racially discriminatory patterns so as to insure compliance with the Acts of Congress and the Constitution. An amended and supplemental complaint has detailed claims of discriminatory student assignments. This was filed February 27, 1974.

## SUMMARY OF THE TRIAL COURT'S DECISION AS TO LIABILITY

The judgments sought to be reviewed by the government were entered on October 6 and March 28, 1977. Prior to 1954, the date of *Brown v. Board of Education,* 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954)—a predecessor case to the present one from Topeka, Kansas, which involved the same dual school system statute—Kansas City, Kansas operated a formal, statutorily sanctioned dual system.

The trial court found that there had been virtually no progress in dismantling the racially segregated professional faculties and staffs since 1972, and that the defendants had not remedied the dual school policy. As to student assignment, the district was found to be composed of three separate units: (1) The first of these the court held

to be completely untainted by any discriminatory school board action; (2) The second unit was held to be fully integrated as a result of the dismantling of the pre-1954 system; (3) The final segment involved five former statutory dual black schools in which the school board's discriminatory practices dated back to the pre-1954 period and which, despite the Supreme Court's decision in *Brown v. School Board,* have never been desegregated. There were several former dual white schools in this third segment which are now all black or predominantly black because, according to the trial court, of the racial residential transition of the neighborhoods in which they are located. It was determined by the trial court that this long-standing segregation was *de facto* in that it did not result from action of the school board. Consequently, defendants were held not to be legally responsible for it.

The trial court further found that at the high school and junior high school levels, 2,372 of the district's 14,155 secondary students, or 16.8%, attended one of the following three schools, which had black enrollments as follows: Sumner High School, 100%; Northeast Junior High School, 99.9%; and Northwest Junior High School, 98.2%. It further found that of the district's 14,568 elementary students, 4,359, or 29.9%, attended one of the following nine schools and had percentages of blacks as follows: Banneker, 99.8%; Bryant, 97.7%; Chelsea, 72.8%; Douglass, 99%; Fairfax, 99.5%; Grant, 100%; Hawthorne, 99.7%; Parker, 76.2%; and Quindaro, 99.2%. The above schools contained 56% of the district's 11,-523 black students.

The court found that the school board was responsible for the condition of segregation at five of the 12 schools: Sumner, Northeast, Banneker, Douglass and Grant. As to the remaining seven, it concluded that the current conditions of racial imbalance were not created or maintained by the conduct of the defendants. Each of these schools was a white school under the pre-1954 dual system.

### REMEDIES

As to the black schools in which *de jure* segregation was found to exist, the trial court decreed that, at the elementary level, the plan provide for limited freedom of choice involving three black schools and six nearby predominantly white schools plus a district-wide majority to minority transfer option. At the junior high school level, the plan closed the black school found to be *de jure* segregated and reassigned its students to four predominantly white schools. At the high school level, the plan sought to convert the black school found to be *de jure* segregated into a magnet school to attract voluntary white transfers combined with mandatory reassignment of the remaining black students to predominantly white schools.

### CONTENTIONS ON APPEAL

The government's position is that the trial court erred in the area of extent and scope of liability, but even assuming the correctness of the district court's decision as to scope of liability, the United States maintains that it was error for the court to decree freedom of choice at the elementary level. The government further contends that it was error for the school board to close the black junior high school which was found to be *de jure* segregated and to place almost the entire burden to achieve desegregation on black students. The government also objects to the fact that the district court adopted without modification defendants' plan for faculty desegregation, a plan which relies upon the defendants' preexisting policies and procedures.

We are told that the freedom of choice plan relating to the elementary level has resulted in 122 black students transferring out of their schools, and no white students have transferred into the schools pursuant to the majority to minority transfer policy in the white schools.

The defendant school board has cross-appealed, but inasmuch as the school board submitted the plan in large part, and in

view of the disposition which we here make, we see no necessity for discussing the school board's plan.

As indicated, this case was argued before this court on April 19, 1979. At that time the Supreme Court had not decided *Columbus Bd. of Ed. v. Penick*, —— U.S. ——, 99 S.Ct. 2941, 61 L.Ed.2d 666 (1979), and *Dayton Bd. of Ed. v. Brinkman*, —— U.S. ——, 99 S.Ct. 2971, 61 L.Ed.2d 720 (1979). We were, however, aware that these cases were pending. These decisions were handed down by the Supreme Court on July 2, 1979.

In *Columbus, supra,* the Supreme Court affirmed the judgment of the Court of Appeals for the Sixth Circuit. The Sixth Circuit had affirmed the district court's judgment. In essence, the school board's conduct in *Columbus* was held to have been animated by an unconstitutional, segregative purpose and also to have had a current, segregative impact which was sufficiently systemwide to warrant the remedy ordered by the district court. An important part of the Supreme Court's opinion was devoted to the proposition that where a racially discriminatory school system was shown to exist, *Brown II* imposed the duty on the school board to effect a change to a non-discriminatory school. *Brown II,* 349 U.S. 294, at 301, 75 S.Ct. 753, 99 L.Ed. 1083. Also cited and relied on were *Green v. County School Board,* 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716 (1968), and *Swann v. Charlotte-Mecklenburg Board of Education,* 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971).

The Supreme Court noted that *Keyes v. School Dist. No. 1,* 413 U.S. 189, 93 S.Ct. 2686, 37 L.Ed.2d 548 (1973), had "held that purposeful discrimination in a substantial part of a school system furnishes a sufficient basis for an inferential finding of a systemwide discriminatory intent unless otherwise rebutted, and that given the purpose to operate a dual school system one could infer a connection between such a purpose and a racial separation in other parts of the school system." 99 S.Ct. at 2952.

The Supreme Court in *Columbus* also ruled that proof of purposeful and effective maintenance of a body of separate black schools in a substantial part of the system was of itself prima facie proof of a separate system, and that it supported a finding to that effect, absent sufficient contrary proof by the school board. Still another holding in *Columbus* was that the board had a continuing affirmative duty to disestablish the dual school system as mandated by *Brown II,* and that nothing in the record showed at the time of the trial the dual school system in *Columbus* and its effect had been disestablished. The Court said *Brown II,* quoting from *Green v. County School Board, supra,* "was a call for the dismantling of well-entrenched dual systems," and that school boards operating such systems were "clearly charged with the affirmative duty to take whatever steps might be necessary to convert to a unitary system in which racial discrimination would be eliminated root and branch. * * * Each instance of a failure or refusal to fulfill this affirmative duty continues the violation of the Fourteenth Amendment." 99 S.Ct. at 2947.

In *Dayton,* the allegations in the complaint were that the Dayton Board of Education was operating a racially segregated school system in violation of the Equal Protection Clause of the Fourteenth Amendment. The district court dismissed the complaint agreeing that the Dayton schools were highly segregated, but holding that their failure to alleviate was not actionable absent evidence that the racial separation had been caused by the Board's own purposeful discriminatory conduct. The district court believed that the plaintiffs had failed to show either discriminatory purpose or segregative effect with respect to the board's policies including faculty hiring and assignment out of optional attendance zones, transfer policies, and the location and construction of new and expanded school facilities. The Court of Appeals reversed holding that at the time of *Brown,* the Dayton Board had operated a racially segregated dual school system and that it was

constitutionally required to disestablish that system and its effects, that it had failed to discharge this duty, and that, as a consequence, the dual system, together with the intentionally segregative impact of various practices, were of systemwide import calling for a systemwide remedy. The Supreme Court affirmed the Court of Appeals, and said that given the fact that the defendants were operating intentionally a dual school system, that the finding to the contrary by the district court was clearly erroneous.

The Court rejected the idea that even though a system had existed in 1954 when *Brown v. Board of Education, supra,* was decided, that it was not intentionally segregated unless there existed an independent intent at the present time of suit. The Court said:

> Given intentionally segregated schools in 1954, however, the Court of Appeals was quite right in holding that the Board was thereafter under a continuing duty to eradicate the effects of that system, *Columbus,* ___ U.S., at ___, 99 S.Ct., at 2947–2949, and that the systemwide nature of the violation furnished prima facie proof that current segregation in the Dayton schools was caused at least in part by prior intentionally segregative official acts. Thus, judgment for the plaintiffs was authorized and required absent sufficient countervailing evidence by the defendant school officials. *Keyes, supra,* 413 U.S., at 211, 93 S.Ct. at 2698; *Swann, supra,* 402 U.S., at 26, 91 S.Ct., at 1281.

99 S.Ct. at 2979.

It appeared that every school which was 90 percent or more black in 1951–52, 1963–64, or 1971–72, and which was still in use at the time of the writing of the opinion today, remained 90 percent or more black. The white schools remained white. The Court of Appeals judgment held that there had been a failure to eliminate the continuing systemwide effects of prior discrimination and that the board had not come forward with evidence that the current racial com-

position of the schools did not reflect the systemwide impact of the board's prior discriminatory conduct. The Court cited with approval *Keyes v. School Dist. No. 1, supra,* 413 U.S. at 201, 93 S.Ct. 2686. The Court concluded:

> The Court of Appeals was also quite justified in utilizing the Board's total failure to fulfill its affirmative duty—and indeed its conduct resulting in increased segregation—to trace the current, systemwide segregation back to the purposefully dual system of the 1950's and to the subsequent acts of intentional discrimination. See *supra* at 2980; *Columbus,* ___ U.S., at ___, 99 S.Ct., at 2949; *Keyes, supra,* 413 U.S., at 211, 93 S.Ct., at 2698; *Swann, supra,* 402 U.S., at 21, 26–27, 91 S.Ct., at 1278, 1281–1282.

99 S.Ct. at 2981.

In *Columbus,* the Supreme Court acknowledged that for the plaintiff to prove its case, it must establish not only that segregated schools existed, but also that it was brought about or maintained by intentional state action, Citing the district court's opinion at 429 F.Supp. 251, and quoting from *Keyes, supra,* 413 U.S. at 198, 93 S.Ct. 2686. The Supreme Court went on to say that the district court also recognized that under the cases "disparate impact and foreseeable consequences, without more, do not establish a constitutional violation." 99 S.Ct. at 2950. The Court said, however, that foreseeable and anticipated disparate impact are relevant evidence to prove the ultimate fact, forbidden purpose. It is said that these cases did not forbid the foreseeable effects standards from being utilized as one of the several kinds of proofs from which an inference of segregative intent can properly be drawn. Then the Court added the conclusion:

> Adherence to a particular policy or practice, 'with full knowledge of the predictable effects of such adherence upon racial imbalance in a school system is one factor among many others which may be considered by a court in determining wheth-

er an inference of segregative intent should be drawn.'

99 S.Ct. at 2950.

The Supreme Court added that:

> The District Court thus stayed well within the requirements of *Washington v. Davis* [426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597] *and Arlington Heights* [*Village of Arlington Heights v. Metropolitan Housing Dev. Corp.,* 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450].

99 S.Ct. at 2950.

The above cases deal with significant issues in the area of school desegregation. The Supreme Court had not announced its decisions in *Columbus* and *Dayton* at the time that this case was decided by the district court and at the time that it was argued before this court. Considering the fundamental nature of the decisions, it is our view that the trial court should have an opportunity to reconsider its decisions in the light of these rulings. So, we conclude that the cause should, as a matter of proper judicial administration, be remanded to the district court in order to give that court an opportunity in the first instance to reconsider its findings and judgment.

Accordingly, it is the order of this court that the judgment of the district court be vacated and that the cause be remanded to the district court with directions and authorization to that court to reopen the case to the extent necessary and to reconsider it in the light of the *Columbus* and *Dayton* decisions and to take any further action that it deems necessary in the light of the *Columbus* and *Dayton* cases.

It is so ordered.