942 F.2d 487
 69 Ed. Law Rep. 705
 Kalima JENKINS, by her friend, Kamau AGYEI; Carolyn Dawson,
by her next friend, Richard Dawson; Tufanza A. Byrd, by her
next friend, Teresa Byrd; Derek A. Dydell, by his next
friend, Maurice Dydell; Terrance Cason, by his next friend,
Antoria Cason; Jonathan Wiggins, by his next friend,
Rosemary Jacobs Love; Kirk Allan Ward, by his next friend,
Mary Ward; Robert M. Hall, by his next friend, Denise Hall;
Dwayne A. Turrentine, by his next friend, Shelia
Turrentine; Gregory A. Pugh, by his next friend, David
Winters, on behalf of themselves and all others similarly
situated; Appellees,
American Federation of Teachers, Local 691, Appellee,
v.
The STATE OF MISSOURI; Honorable John Ashcroft, Governor of
the State of Missouri;
Wendell Bailey, Treasurer of the State of Missouri;
Missouri State Board of Education Roseann Bentley Dr. Dan
Blackwell Rev. Raymond McCallister, Jr. Susan D.
Finke Thomas R. Davis (Presiding)
Cynthia B. Thompson Gary M. Cunningham
Members of the Missouri State Board of Education Robert E.
Bartman, Commissioner of Education of the State of
Missouri, Appellants,
and
School District of Kansas City, Missouri and Claude C.
Perkins, Superintendent thereof, Appellees.
 No. 90-2314.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 25, 1991.
Decided Aug. 14, 1991.
 
 Michael Fields, Jefferson City, Mo., argued, for appellant; John W. Simon and Bart A. Matanic, Jefferson City, Mo., on the brief.
 Arthur Benson, Kansas City, Mo., argued, for appellee; Theodore M. Shaw, Los Angeles, Cal. and Doyle R. Pryor of Kansas City, Mo., on the brief.
 Before McMILLIAN and JOHN R. GIBSON, and Circuit Judges, HEANEY, Senior Circuit Judge.
 JOHN R. GIBSON, Circuit Judge.
 
 
 1
 Another appeal from the Kansas City, Missouri, School District desegregation remedy is now before us. The State appeals from a district court[1] order approving a contingency plan that modifies the magnet school admissions policy for the 1990-91 school year. The contingency plan temporarily allows deviation from the original Long-Range Magnet School Plan, which required that new magnet schools open with a student population that is 60% minority and 40% non-minority. The State argues that the district court erred or abused its discretion in adopting the contingency plan and in rejecting the State's two alternatives to the contingency plan. The State also argues that the contingency plan will result in the reestablishment of racially identifiable schools, and thus, the court cannot require funding of certain components of the remedial plan. The State's arguments lack merit, and we affirm the district court order.
 
 
 2
 On June 14, 1985, the district court entered its first order for the desegregation of the Kansas City, Missouri, School District. Jenkins v. Missouri, 639 F.Supp. 19 (W.D.Mo.1985), aff'd as modified, 807 F.2d 657 (8th Cir.1986) (en banc), cert. denied, 484 U.S. 816, 108 S.Ct. 70, 98 L.Ed.2d 34 (1987). An important part of the district court remedy included the implementation of a magnet school program. Id. at 34-35. The KCMSD prepared and presented its Long-Range Magnet School Plan, which the district court approved on November 12, 1986. Jenkins v. Missouri, No. 77-0420-CV-W-4, slip op. at 4 (W.D.Mo. Nov. 12, 1986).
 
 
 3
 The Long-Range Magnet School Plan provided that all of the middle and high schools in the KCMSD become magnet schools in the 1990-91 school year. The Plan required that the district's new magnet schools open with a 60% minority and 40% non-minority student population. The Plan also required that existing schools that are converted to magnet schools reduce their minority percentage by 2% per year until the schools reach the 60%/40% goal.
 
 
 4
 As the 1990-91 school year approached, it became evident that the 60%/40% goal would not be reached and that if the goal were adhered to, all minority students could not be placed in the middle and high schools for the school year. KCMSD proposed a contingency plan providing for a temporary deviation from the 60%/40% racial admissions guideline. The State objected to the KCMSD's contingency plan, arguing that the plan would lead to the reestablishment of racially segregated schools. The State suggested that instead of adopting the contingency plan proposed by the KCMSD, the KCMSD should either convert the failing magnet schools back to traditional schools to accommodate students who could not get into magnet schools without upsetting the racial guideline, or open traditional school annexes at the magnet schools for such students. Although the district court stated that it viewed the 60%/40% guideline as a steadfast magnet school admissions requirement, it adopted the contingency plan as temporarily necessary under the circumstances and rejected the alternatives proposed by the State. Jenkins v. Missouri, No. 77-0420-CV-W-4, slip op. at 4 (W.D.Mo. July 3, 1990). The State appeals, arguing that the district court erred or abused its discretion in: (1) adopting the contingency plan because the plan will lead to the reestablishment of racially identifiable schools; (2) failing to accept its alternatives to the contingency plan; and (3) continuing to hold the State liable for the funding of remedial components in these circumstances.
 
 
 5
 Before we address the merits of the State's arguments, we note that we view the district court order in the context of the court crafting and managing a remedy for the failure of both the KCMSD and the State to eliminate vestiges of the dual school system lingering in the KCMSD. We need not, as we deal with each chapter of this ongoing and thoroughly litigated remedy, recite all of the details as to what has gone on before, but those who are interested may refer to Jenkins v. Missouri, 807 F.2d 657, 682-686 (8th Cir.1986) (en banc) (Jenkins I ), cert. denied, 484 U.S. 816, 108 S.Ct. 70, 98 L.Ed.2d 34 (1987), Jenkins v. Missouri, 855 F.2d 1295 (8th Cir.1988) (Jenkins II ), aff'd in part and rev'd in part, 495 U.S. 33, 110 S.Ct. 1651, 109 L.Ed.2d 31 (1990), Jenkins v. Missouri, 890 F.2d 65 (8th Cir.1989) (Jenkins III ), and Jenkins v. Missouri, 931 F.2d 470 (8th Cir.1991) (Jenkins IV ).
 
 I.
 
 6
 The State first argues that the district court abused its discretion or otherwise erred in failing to consider, credit, or properly weigh evidence that the adoption of the contingency plan would lead to the reestablishment of racially identifiable schools.
 
 
 7
 The district court has broad discretion over the implementation of its remedial orders. As we stated in Jenkins IV, "a federal court has 'inherent jurisdiction in the exercise of its equitable discretion and subject to appropriate appellate review to vacate or modify its injunctions.' " 931 F.2d at 482 (quoting Booker v. Special School Dist. No. 1, 585 F.2d 347, 352 (8th Cir.1978), cert. denied, 443 U.S. 915, 99 S.Ct. 3106, 61 L.Ed.2d 878 (1979)). School desegregation plans are particularly likely to need adjustment. As the Supreme Court has observed in such cases: " '[E]quity has been characterized by a practical flexibility in shaping its remedies and by a facility for adjusting and reconciling public and private needs.' " Milliken v. Bradley, 433 U.S. 267, 288, 97 S.Ct. 2749, 2761, 53 L.Ed.2d 745 (1977) (Milliken II ) (quoting Brown v. Board of Educ., 349 U.S. 294, 300, 75 S.Ct. 753, 756, 99 L.Ed. 1083 (1955)). The Fifth Circuit recently cited with approval a treatise that stated: " '[A] court must continually be willing to redraft the order at the request of the party who obtained equitable relief in order to insure that the decree accomplishes its intended result.' " United States v. Lawrence County School Dist., 799 F.2d 1031, 1046 (5th Cir.1986) (quoting 11 C. Wright & A. Miller, Federal Practice and Procedure, § 2961 at 599 (1973)).
 
 
 8
 The State argues that the district court erred or abused its discretion in rejecting the testimony of its expert witnesses who testified about the phenomenon of "tipping." The experts testified that if a minority population at a school reaches a certain level, non-minority students will leave and the school will become all-minority or nearly all-minority, and that this phenomenon is described as "tipping."
 
 
 9
 The State presented affidavits from Joan Solomon, Director of Urban Education for the State of Missouri, who had been the State's representative to several committees in the St. Louis desegregation case, and Fred Linhardt, Director of Vocational Planning and Evaluation for the Department of Elementary and Secondary Education for the State of Missouri, also a member of one of the committees in the St. Louis case. Solomon testified in her affidavit that "any increase in minority percentage over 60% in Kansas City's magnet schools could well make it significantly more difficult to attract non-minority students to the schools, and to retain present non-minority students." Likewise, Linhardt testified that in his experience it was difficult to attract and retain non-minority students in primarily minority schools, and that he had witnessed tipping in public vocational high schools in St. Louis City and County. He also concluded that increasing the minority percentage in the magnet schools above 60% "could well make it significantly more difficult" to attract and retain non-minority students.
 
 
 10
 The State argues that its evidence regarding tipping was uncontroverted as KCMSD presented no affidavits, declarations, or documents saying that tipping would not be a problem in the magnet schools. The State also points to decisions of various other courts, as well as this court, recognizing the difficulties attendant to desegregation efforts when minority percentages in schools reach varying higher levels.[2] The district court answered the State's argument by concluding that "[t]he State has failed to provide support for its proposition that allowing the KCMSD to enroll more than 60% minority students in magnet schools would make it more difficult for the KCMSD to attract and retain non-minority students." Slip op. at 5 (July 3, 1990 order).
 
 
 11
 The State's argument on appeal is easily answered. The State's argument is based upon the assumption that its unopposed testimony has preclusive weight. In essence, the State's argument is that the district court judge, who has lived with this case since 1977, must give credit to the affidavits of two state employees with respect to the tipping phenomenon after problems have developed in the first few years of implementing a massive school desegregation plan. The State's argument ignores the district court's duty to make factual findings based on the evidence before it and, in doing so, the court's right to reject testimony that may be presented by either side.
 
 
 12
 A number of additional factors support our decision to reject the State's argument. First, at this point, KCMSD has only begun its vast efforts to remedy the vestiges of the dual system of education in the school district. Second, despite repeated urging by this court, as of yet, the parties have only been able to achieve a voluntary interdistrict transfer plan involving 10 KCMSD students attending an elementary school in Missouri City. It is evident that utilizing a voluntary interdistrict transfer plan would ease the task of increasing the non-minority enrollment percentage in the KCMSD. Third, although the progress to date has been excruciatingly slow, the record demonstrates that progress has occurred, and the State's assumption that the plan is a failure is premature, to say the least. The KCMSD enrollment figures indicate that in the 1987-88 school year, KCMSD placed approximately 140 new non-minority students in the magnet schools; in 1988-89, 300; in 1989-90, 517; and in 1990-91, 654. Moreover, many schools with a high percentage of minority students have, in fact, been successful in attracting non-minority students. For example, Central Middle School, which was nearly 100% minority, now has a 24% non-minority enrollment. In addition, Pinkerton Latin Grammar Elementary, Knotts Environmental Science Elementary, and Faxon Elementary have made similar progress in increasing their non-minority student population.
 
 
 13
 Under these circumstances, we cannot conclude that the district court erred or abused its discretion in adopting the contingency plan.
 
 II.
 
 14
 The State next argues that the district court erred in failing to accept either of its two alternatives to the contingency plan and in concluding that the State had failed to present a viable solution to the potential problems of student placement for the 1990-91 school year. Specifically, the State suggested that instead of modifying the 60%/40% guideline, the KCMSD should either "de-magnetize" certain magnet schools that had been unsuccessful in attracting non-minority students and open these as traditional schools to students not admitted to magnet schools, or create traditional school annexes at the existing magnet schools for the temporary use by students whom the KCMSD could not serve consistently with the 60%/40% guideline. Along similar lines, the State argues that if the KCMSD is allowed to abandon the goal of numerical integration, then the court should not require the State or the KCMSD's patrons to fund remedial components that have as their sole or principal justification the attraction of non-minority students from the suburban and private schools.
 
 
 15
 The district court rejected the State's alternatives because it concluded that either suggestion would re-create totally segregated schools in the KCMSD. Slip op. at 5 (July 3, 1990). It stated: "The State's assumption that some magnet schools are failing is premature, as the [Long Range Magnet Plan] has not been fully implemented." Id.
 
 
 16
 The district court did not err in rejecting the State's alternatives and continuing to hold the State responsible for funding of the remedial plan. The most obvious shortcoming of the State's arguments is that the arguments are directed solely to the KCMSD's progress in attracting non-minority students to the magnet schools and do not consider any of the district court's findings concerning the past segregation in the KCMSD or the causes and effects of that segregation. In Jenkins II, we pointed to district court findings that segregation has caused a system-wide reduction in student achievement in the KCMSD schools, 855 F.2d at 1300 (citing Jenkins, 639 F.Supp. at 24), that segregation in KCMSD had caused the departure of whites in the system to private and suburban schools, id. (citing slip op. at 1-2 (August 25, 1986)), and that " '[KCMSD's] physical facilities have literally rotted' ", id. (quoting Jenkins v. Missouri, 672 F.Supp. 400, 411 (W.D.Mo.1987)). We affirmed the remedial orders entered by the district court stating: "The foundation of the plan adopted was the idea that improving the KCMSD as a system would at the same time compensate the blacks for the education they had been denied and attract whites from within and without the KCMSD to formerly black schools." Id. at 1301. We affirmed the magnet school program as an integral part of the remedy with the goals of improving the education provided to all KCMSD students and attracting non-minority students back to the KCMSD schools. Id. at 1301-02. We further concluded that a substantial capital improvement plan would be required to achieve these goals. Id. at 1304-05.
 
 
 17
 As we have made abundantly clear, the purpose of the remedy in this litigation is at least two-fold: First, to remedy the deprivation of educational opportunities to children in the KCMSD, and second, to attract non-minority students to the school district. As we reiterated in Jenkins II, the long term goal of the district court's effort was:
 
 
 18
 to make available to all KCMSD students educational opportunities equal to or greater than those presently available in the average Kansas City, Missouri, metropolitan suburban school district. In achieving this goal the victims of unconstitutional segregation will be restored to the position they would have occupied absent such conduct, while establishing an environment designed to maintain and attract non-minority enrollment.
 
 
 19
 855 F.2d at 1301-02 (citing slip op. at 17 (June 16, 1986)) (emphasis added in 855 F.2d at 1301-1302).
 
 
 20
 The State's arguments simply ignore the goals of the district court remedial orders that have been amply discussed and approved by this court. Improving educational opportunities and attempting to attract non-minority students, whether from private schools or schools outside the district, present difficult management tasks. That effort is now in mid-stream. Under these circumstances, we are particularly mindful of the difficulty faced by the district court judge. We see no abuse of discretion in the orders entered in this case, no legal error, and insofar as the findings are based upon findings of fact, no findings of fact that are clearly erroneous.
 
 
 21
 The corollary to the State's argument is that if the integration goals are not achieved, KCMSD should simply reestablish what the district court termed "the recreation of totally segregated schools in the KCMSD." Slip op. at 5 (July 3, 1990). The district court did not err when it concluded that the State's alternatives would re-create segregated schools. The State's argument does not otherwise deserve further response.
 
 
 22
 It must be remembered that the district court issued its magnet school order on November 12, 1986. This court decided the appeal of that order and others on August 19, 1988. Jenkins II, 855 F.2d at 1296. Implementation of the magnet school orders has been slow. Part of the reason for the slow progress is the enormity of the task of remedying constitutional wrongs that had a tremendous impact in the Kansas City area. Implementation of the plan is requiring a considerable expenditure of funds to build new facilities and to develop plans for ambitious educational programs. It must also be said that in all likelihood, part of the reason for the slow pace is the fact that the State or a group of citizens has vigorously challenged and appealed every step and turn in implementing the desegregation plan. Exclusive of disputes on attorneys' fees, this is the twentieth appeal since our first order approving the intradistrict desegregation plan. At the time the parties argued this case, four other cases were argued, and we have ascertained since argument that four more appeals have been filed. It is to be expected that an issue of this kind will, after the first litigation, produce other contested issues. On the other hand, there is a unique irony in this situation in which one of the parties substantially contributing to the protracted litigation presents an argument that because there has not been immediate success, the plan should be scrapped.
 
 
 23
 The beneficiaries of the desegregation plan are the children of the Kansas City, Missouri, School District. The programs being developed in the district are proving to be of interest to an increasingly larger group of non-minority students who had been enrolled in suburban districts and private schools and must be given a chance to work.
 
 
 24
 The Jenkins group has argued that the issues in this appeal are moot. Without extended discussion, we conclude that the issues are capable of repetition. Indeed, the records of this court reflect that the State has filed another appeal from a similar order with respect to the 1991-92 school year. This satisfies us that we need not stay our hand because of mootness.
 
 
 25
 Finally, a brief has also been filed for a group of amici curiae arguing that they may be precluded from attending the KCMSD school of their choice in the future as a result of the magnet school admissions racial quota policy. It is evident from the contingency plan adopted that efforts are being made to ensure that minority school children will be able to attend magnet schools. Indeed, that is the very intent of the contingency plan. We, therefore, reject the arguments put forth by amici.
 
 
 26
 We affirm the district court's order.
 
 
 
 [1]
 The Honorable Russell G. Clark, United States District Judge, Western District of Missouri
 
 
 [2]
 Liddell v. Board of Educ., 469 F.Supp. 1304, 1327 (E.D.Mo.1979), rev'd on other grounds, Adams v. United States, 620 F.2d 1277 (8th Cir.1980) (subsequent history omitted); Liddell v. Missouri, 731 F.2d 1294 (8th Cir.) (en banc), cert. denied, 469 U.S. 816, 105 S.Ct. 82, 83 L.Ed.2d 30 (1984); Clark v. Board of Educ., 705 F.2d 265 (8th Cir.1983); Morgan v. Kerrigan, 401 F.Supp. 216 (D.Mass.1975), aff'd, 530 F.2d 401 (1st Cir.), cert. denied, White v. Morgan, 426 U.S. 935, 96 S.Ct. 2648, 49 L.Ed.2d 386 (1976)